STATE OF NORTH CAROLINA v. BOBBY DARDEN

No. 808SC121

(Filed 5 August 1980)

1. **Criminal Law § 89.6– bias of witness – exclusion of evidence – failure of record to show excluded answer – repetitious testimony**

The trial court in a rape case did not err in excluding testimony by defendant as to whether a State's witness had threatened him and that he and the State's witness had a "difference over a money deal" and "it's like he's got it in for me" where the record failed to show what defendant's testimony would have been to the question about threats, and where the rape victim testified against defendant and the credibility of the State's

witness was not critical, and evidence of the possible bias of the State's witness against defendant had already been entered into the record when defendant testified that he and the witness "don't get along too good" and that they had "reasons for not getting along."

2. **Criminal Law § 128.2– failure to declare mistrial after jury deliberated for some time**

    The trial court did not abuse its discretion in failing to declare a mistrial when the jury foreman stated after the jury had deliberated for one hour and thirty-five minutes that it was doubtful that the jury could reach a verdict if it deliberated further the first day or when the jury requested additional evidence after deliberating for twenty-five minutes the next day. G.S. 15A-1235(d).

3. **Criminal Law § 122.2– instructions urging jury to reach agreement – no coercion**

    The trial court in a rape case did not coerce a verdict when the jury requested additional evidence after deliberating for some two hours and the court instructed the jury that a failure to agree would mean that more time of the court would be spent in a retrial of the action and that it was the duty of the jurors to do whatever they could to reconcile their differences and reach a verdict if such was possible without the surrender of any juror's conscientious convictions.

APPEAL by defendant from *Brown, Judge.* Judgment entered 29 November 1979 in Superior Court, WAYNE County. Heard in the Court of Appeals 6 June 1980.

Defendant was found guilty of the offense of second degree rape and was sentenced to a term of imprisonment.

The state presented evidence tending to show that on 28 September 1979, as Pamela Bryan was driving defendant to his house, he forced her to stop the car and to have sexual intercourse with him without her consent. Both defendant and John Smith, whom Pamela had been visiting, had requested that she drive defendant home from Smith's house. Defendant's evidence tended to show that he did not see Pamela Bryan on 28 September 1979, that he did not go to Smith's house that night, and that he was in Goldsboro at the time of the alleged rape.

After the court's charge, the jury retired at 4:38 p.m. for deliberations. It returned to the courtroom at 6:12 p.m., and the following colloquy occurred:

COURT: Mr. Foreman, I take it the jury has not arrived at a verdict?

MR. ROBITALLE: Yes, sir.

COURT: Do you feel like if you were permitted to deliberate some more today that you might be able to reach a verdict?

MR. ROBITALLE: In my mind it's doubtful.

The judge then asked the jury to return at 9:30 the next morning. After deliberating from 9:30 a.m. until 9:55 a.m., the jury returned to the courtroom and heard the judge read the following handwritten note, sent by the foreman to request additional evidence before returning a verdict:

11/29/79

Judge Brown:

We the jury respectfully request further information to help us render a fair and equitable decision.

The results of the complete physical examination of Pam made at Wayne Memorial Hospital was not provided by the State.

Since the results of this exam may have a direct influence on the results of this trial, we respectfully request the state provide the jury with these results:

Sincerely,
George C. Robitalle
Jury Foreman

The court then further charged the jury as follows:

The jury has heard all the evidence in the case. There will be no further evidence presented. You are asked to make your decision on the evidence as you heard it in this court-

State v. Darden

room during the trial of this case. Let me say ladies and gentlemen to you before you retire to resume your deliberations: it is apparent to the court that the jury apparently is having some difficulty in reaching a verdict in the case, and I presume that you realize what a disagreement means; it means that more time of the court will have to be consumed in the trial of this action again. I do not wish to force or coerce you in any way to reach a verdict but it is your duty to try to reconcile your differences and reach a verdict if it can be done without the surrender of one's conscientious convictions. You have heard all the evidence in the case. A mistrial, of course, will mean that another jury will have to be selected to hear the case and the evidence again. A jury will have to ultimately answer the issue in this case and I feel that you are as qualified as any jury to answer the issue. The court recognizes the fact that there are sometimes reasons why jurors cannot agree. The court wants to emphasize the fact that it is your duty to do whatever you can to reason the matter over together as reasonable men and women and to reconcile your differences if such is possible without the surrender of conscientious convictions and to reach a verdict in the case.

The jury deliberated from 10:00 a.m. until 11:12 a.m., when a verdict of guilty was returned. Each juror, upon being polled, stated that the announced verdict was his verdict. Defendant appeals from the judgment of the court.

*Attorney General Edmisten, by Assistant Attorney General Daniel C. Oakley, for the State.*

*J. Faison Thomson Jr. for defendant.*

MARTIN (Harry C.), Judge.

[1] Defendant's first assignment of error is the trial court's sustaining objections by the state to certain evidence offered by defendant and allowing the state's motion to strike certain evidence. On direct examination of defendant, he testified as follows:

When I saw him [John Smith] about ten o'clock at Hollo-
man's Store, we just looked at each other, me and John. We
don't get along too good. He said something like, you know,
well it won't much. I don't recall what it was he said; it
won't nothing; see, we don't get along; so we don't speak; we
got reasons for not getting along.

Defendant was then asked whether Smith "made any threats to
you?" This question was objected to; the objection was sus-
tained. Then, in response to the question "Why don't you and
John Smith get along?" defendant answered:

A. We ain't got along about, since April. We had a differ-
ence over a money deal; we don't speak. It's like he's got it
in for me.

An objection was sustained, and the court allowed the state's
motion to strike. Defendant argues that it was error to exclude
this testimony "as to a possible basis for the bias of the State's
witness, John Christian Smith."

The record fails to show what answer defendant would have
given had the objection to the question concerning threats by
Smith not been sustained. It cannot, therefore, be determined
that the court's ruling, even if erroneous, was prejudicial. *State
v. Martin*, 294 N.C. 253, 240 S.E. 2d 415 (1978). We note, parenthet-
ically, that defendant had already testified that Smith "said
something like, you know, well it won't much. I don't recall what
it was he said; it won't nothing."

Defendant cites *State v. Honeycutt*, 21 N.C. App. 342, 204
S.E. 2d 238, *cert. denied*, 285 N.C. 593 (1974), as clear authority
for admitting the evidence of possible bias on the part of Smith,
a witness for the state. In that case the Court held that defend-
ant was prejudiced by the refusal of the trial court to allow
him to testify about a previous altercation he had had with a
witness for the state, stating that the evidence should have
been admitted to show bias. The witness was the state's only
witness to the murder for which the defendant was being tried.
The Court found the credibility of the witness critical in the

case, because when he testified at two earlier trials the jury was unable to reach a verdict. Defendant was convicted at his third trial when the witness was not present but the transcript of his earlier testimony was read to the jury. Not only was defendant deprived of the opportunity to further cross-examine the witness and to have the jury observe the witness's demeanor, but his burden was "prejudicially compounded" by the court's refusal to allow him to testify about the earlier altercation.

The circumstances are quite different in this case. The victim of the alleged rape, Pamela Bryan, had already testified against the defendant; the credibility of John Smith was not "critical." Although the court allowed the state's motion to strike defendant's testimony that he and Smith had a "difference over a money deal" and "[i]t's like he's got it in for me," there is in the record defendant's evidence that he and Smith "don't get along too good" and "got reasons for not getting along." It was not error for the court to disallow repetitive evidence when evidence of the possible bias had already been entered into the record. This assignment of error is overruled.

[2] Defendant next argues that the court's failure to declare a mistrial, either at the end of the first day of the trial or after receiving the note from the jury foreman the next morning, constitutes reversible error. We do not agree. Defendant relies upon N.C.G.S. 15A-1235(d) for his position: "If it appears that there is no reasonable possibility of agreement, the judge may declare a mistrial and discharge the jury." Contrary to defendant's contention that it was "clearly incumbent" upon the judge to declare a mistrial, this statute does not mandate the declaration of a mistrial; it merely permits it. Even assuming that the response of the jury foreman after one hour and thirty-four minutes of deliberation the first day and twenty-five additional minutes the second day made it apparent to the judge that there was no "reasonable possibility of agreement," the action of the judge in declaring or failing to declare a mistrial is reviewable only in case of gross abuse of discretion. *State v. Battle*, 279 N.C. 484, 183 S.E. 2d 641 (1971). Defendant has failed to carry the burden of showing such abuse here.

[3] Defendant's final assignment of error is that the court prejudiced the defendant by its second charge to the jury, after receipt of the note. Again, his argument is that N.C.G.S. 15A-1235 was not complied with. Subsection (c) of this statute reads:

> If it appears to the judge that the jury has been unable to agree, the judge may require the jury to continue its deliberations and may give or repeat the instructions provided in subsections (a) and (b). The judge may not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

This statute, as indicated by its title, *Length of deliberations; deadlocked jury*, is applicable in the event the jury is deadlocked. The record in our case fails to show that the jury was deadlocked or unable to agree. In its response to the jury's request for further information, the court stated that "it is apparent to the court that the jury apparently is having some difficulty in reaching a verdict." It went on to caution the jury that a disagreement meant that more time of the court would be spent in a retrial of the action. The legislature by this statute did not undertake to set out what the trial judge must instruct the jury or to limit the instructions the trial judge could give. The test remains whether the charge as a whole is coercive. Isolated mention of the necessity to retry the case does not warrant a new trial unless the charge as a whole is coercive. *State v. Alston,* 294 N.C. 577, 243 S.E. 2d 354 (1978). We do not find that the charge as a whole coerced a verdict in this case. The assignment of error is therefore overruled.

In defendant's trial we find

No error.

Judges WEBB and WELLS concur.