STATE OF NORTH CAROLINA v. AARON STUART VanCAMP

No. COA01-860

(Filed 21 May 2002)

**1. Evidence— cocaine—seizure from vehicle where defendant was passenger**

The trial court did not err in a trafficking in cocaine case by admitting evidence of 30.7 grams of cocaine seized at a license checkpoint from the console of a vehicle in which defendant was a passenger, because: (1) defendant has no standing to challenge the search of the vehicle since he had no ownership or possessory interest therein; and (2) even if defendant did have standing, his constitutional rights were not violated when all vehicles going through the checkpoint were stopped and the checkpoint was thus constitutional; an officer conducted a lawful frisk of defendant for weapons, discovered brass knuckles in defendant's pants pocket, and arrested defendant for carrying a concealed weapon; and the officer was justified in conducting a search incident to that arrest of the interior of the vehicle, including the console compartment.

**2. Criminal Law— motion for mistrial—juror saw defendant in custody**

The trial court did not err in a trafficking in cocaine case by concluding that defendant was not entitled to a mistrial after a juror saw defendant in the custody of a sheriff's deputy, because: (1) defendant failed to show an abuse of discretion by the trial court; (2) defendant failed to show any evidence of serious improprieties that would have made it impossible for defendant to receive a fair and impartial verdict; and (3) the trial court sua sponte substituted an alternative juror after denying defendant's motion for a mistrial.

**3. Criminal Law— private unrecorded conference with juror—juror saw defendant in custody**

The trial court did not err in a trafficking in cocaine case by conducting a private unrecorded conference with a juror who saw defendant in custody of a deputy sheriff, because: (1) defendant's failure to timely object to alleged procedural irregularities or improprieties constituted a waiver; and (2) even if there was no waiver, defendant failed to show prejudice when the trial court disclosed the substance of the conversation and both parties were given an opportunity to inquire further concerning the juror.

Appeal by defendant from judgment entered 11 January 2001 by Judge Forrest D. Bridges in Superior Court, Lincoln County. Heard in the Court of Appeals 24 April 2002.

*Attorney General Roy Cooper, by Special Deputy Attorney General John J. Aldridge, III, for the State.*

*Lewis & Shuford, P.A., by Meredith A. Shuford, for the defendant-appellant.*

WYNN, Judge.

Aaron Stuart VanCamp presents the following issues on appeal of his conviction for trafficking cocaine: (I) Did the trial court err in admitting evidence of 30.7 grams of cocaine seized from a vehicle in which defendant was a passenger? (II) Was defendant entitled to a mistrial after a juror saw him in the custody of a sheriff's deputy? and (III) Did the trial judge err in conducting a private unrecorded conference with the juror who saw defendant in custody? For the

reasons stated below, we conclude that defendant received a fair trial, free from prejudicial error.

The evidence at trial tended to show that on 4 August 1999, Lincoln County Deputy Sheriff Brian Huffstickler assisted in conducting a systematic license check of all vehicles at a checkpoint intersection in Lincoln County. This case concerns his nighttime checking of an automobile driven by David Cook and containing defendant as a passenger. Apparently, on approaching the checkpoint, Cook ignored the officer's admonition to stop the vehicle; instead, he continued to drive through the checkpoint while he and defendant nervously talked and looked at each other. After the officer yelled six times for the vehicle to stop, Cook slowed and eventually stopped the vehicle approximately 60 feet past the checkpoint. As the vehicle slowed, the officer looked inside the vehicle with his flashlight and saw the corner of a plastic bag sticking out from the passenger seat occupied by defendant. The officer testified that he knew that plastic baggies, such as the one he observed, were often used as a method for transporting illegal drugs.

When defendant rolled down the window at Officer Huffstickler's request, the officer smelled a strong odor of alcohol coming from the vehicle. Thereafter, the officer asked defendant to step from the vehicle; patted down defendant for weapons; felt what he recognized to be a pair of brass knuckles in defendant's front pants pocket; and arrested defendant for carrying a concealed weapon. The officer then conducted a search of the center console, dash compartment, and passenger seat of the vehicle. His search of the baggie that he had seen earlier, revealed nothing; however, he found a yellow envelope that contained two plastic baggies in the center console which later testing revealed to contain 30.7 grams of crack cocaine.

Cook testified at the trial, without a limiting agreement with the State, implicating defendant as the owner of the crack cocaine. He stated that he agreed to drive defendant to a house in Denver, North Carolina in exchange for $50 and a gram of cocaine. Cook saw defendant put the crack cocaine in his car. He stated that on nearing the checkpoint, he told defendant to throw the drugs out of the vehicle but defendant refused. Cook admitted using cocaine daily and having prior convictions for numerous criminal offenses including possession of cocaine.

At the close of the evidence and before the jury charge, a juror privately revealed to the trial judge that he had inadvertently seen

defendant in an orange jumpsuit. Ultimately, the trial judge informed defendant and his counsel as well as the district attorney, and allowed them an opportunity to question the juror further; but, they all declined to do so. Thereafter, without objection, the trial court *sua sponte* substituted the juror with an alternative juror.

Following defendant's conviction of trafficking in cocaine by possessing 28 grams or more, the trial judge sentenced him to a minimum term of 35 months and a maximum term of 42 months imprisonment and to pay a $50,000 fine. Defendant appealed.

(I) <u>Did the trial court err in admitting evidence of 30.7 grams of cocaine seized from the vehicle in which defendant was a passenger?</u>

[1] We answer: No, because defendant had no standing to challenge the search of the vehicle, and even if he did, his constitutional rights were not violated.

The "[r]ights assured by the Fourth Amendment are personal rights, [which] . . . may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure." *Simmons v. United States*, 390 U.S. 377, 389, 19 L. Ed. 2d 1247, 1256 (1968). Standing to claim the protection of the Fourth Amendment guaranty of freedom from unreasonable governmental searches and seizures is based upon the legitimate expectations of privacy of the individual asserting that right in the place which has allegedly been unreasonably invaded. *See Rakas v. Illinois*, 439 U.S. 128, 138, 58 L. Ed. 2d 387, 398 (1978); *Katz v. U.S.*, 389 U.S. 347, 19 L. Ed. 2d 576 (1967).

In this case, defendant who claims an infringement of his rights, asserts neither an ownership nor a possessory interest in the automobile which was searched. The evidence presented at the pretrial hearing established that defendant did not own the car in which he rode nor was he driving the car. In its order denying defendant's motion to suppress, the trial court correctly concluded as a matter of law that defendant "as a mere passenger in the 1989 Acura, claiming no ownership or possessory interest therein, had no legitimate expectation of privacy in the center console of the vehicle, and therefore, has no standing to assert any alleged illegality of the search thereof."

Even assuming *arguendo*, that defendant possessed a justiciable expectation of privacy in the vehicle, the trial court's decision to deny

STATE v. VanCAMP

[150 N.C. App. 347 (2002)]

defendant's motion to suppress is based on findings of fact that are supported by competent evidence. "The scope of review on appeal of the denial of a defendant's motion to suppress is strictly limited to determining whether the trial court's findings of fact are supported by competent evidence, in which case they are binding on appeal, and in turn, whether those findings support the trial court's conclusions of law." *State v. Corpening*, 109 N.C. App. 586, 587-88, 427 S.E.2d 892, 893 (1993).

Defendant argues that whether the standard is reasonable suspicion or probable cause, the factual circumstances did not justify his seizure by removal from the vehicle, which led to a search of the vehicle that was not consented to by the driver. "[A]n investigative stop and detention leading to a pat down search must be based on an officer's reasonable suspicion of criminal activity. . . . However, an investigative stop at a traffic check point is constitutional, without regard to any such suspicion, if law enforcement officers systematically stop all oncoming traffic." *State v. Briggs*, 140 N.C. App. 484, 487, 536 S.E.2d 858, 860 (2000) (citations omitted); *see also Delaware v. Prouse*, 440 U.S. 648, 59 L. Ed. 2d 660 (1979). In the present case, the officers were conducting a systematic stop of vehicles to check licenses and registrations. All vehicles going through this checkpoint were stopped; thus, the checkpoint was constitutional. *Id.*

Defendant also challenges his frisk by Officer Huckstickler.

"[W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such person in an attempt to discover weapons which might be used to assault him."

*State v. Streeter*, 283 N.C. 203, 209-10, 195 S.E.2d 502, 506-07, *affirmed*, 283 N.C. 203, 195 S.E.2d 502 (1973) (quoting *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). "Although a routine traffic stop does not justify a protective search for weapons in every instance, once the defendant is outside the automobile, an officer is

permitted to conduct a limited pat down search for weapons if he has a reasonable suspicion based on articulable facts under the circumstances that defendant may be armed and dangerous." *State v. Briggs,* 140 N.C. App. at 488, 536 S.E.2d at 860. When a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such person in an attempt to discover weapons which might be used to assault him. *State v. Sanders,* 112 N.C. App. 477, 481, 435 S.E.2d 842, 845 (1993).

In determining whether the findings of fact sustain the trial court's conclusions of law, we must provide "due weight to inferences drawn from those facts by resident judges and law enforcement officers." *Ornelas v. U.S,* 517 U.S. 690, 699, 134 L. Ed. 2d 911, 920 (1996). A court must consider "the totality of the circumstances—the whole picture" in determining whether a reasonable suspicion to make an investigatory stop exists. *U.S. v. Cortez,* 449 U.S. 411, 417, 66 L. Ed. 2d 621, 629 (1981).

In the present case, the evidence shows that: 1) The vehicle slowed and eventually stopped only after the officer repeatedly yelled for the driver to do so; 2) the vehicle stopped approximately 60 feet beyond the checkpoint and before doing so, the officer observed defendant and the driver nervously talking and making eye contact with each other; 3) at the stopped vehicle, the officer saw, with a flashlight, a plastic baggie which he believed to be the kind typically used to transport illegal drugs; and, when defendant rolled down his window, the officer smelled a strong odor of alcohol. Moreover, the record shows that after exiting from the vehicle, the officer conducted a limited pat down of defendant and discovered brass knuckles in his pants pocket resulting in defendant's arrest for carrying a concealed weapon in violation of N.C. Gen. Stat. § 14-269.

Since the stop and frisk was lawful, the officer was justified in conducting a search incident to that arrest of the interior of the vehicle. Our appellate courts recognize the authority of an officer to search, incident to an arrest, the entire interior of the vehicle, including the glove compartment, console, or other interior compartments. *See New York v. Belton,* 453 U.S. 454, 69 L. Ed. 2d 768 (1981) (holding that when an officer makes a lawful custodial arrest of the occupants

of an automobile he may, as incident of that arrest, search the passenger compartment of the vehicle and may also examine the contents of any container found within the passenger compartment. Container here denotes any object capable of holding another object. It thus includes closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment.); *see also U.S. v. Ross*, 456 U.S. 798, 72 L. Ed. 2d 572 (1982) (holding that where police officers have probable cause to search a vehicle, they may conduct a warrantless search of every part of the vehicle, including all containers and packages within it, that may conceal the object of the search); *State v. Massenburg*, 66 N.C. App. 127, 310 S.E.2d 619 (1984) (holding that warrantless search of defendant's locked glove compartment pursuant to lawful arrest was proper). Accordingly, we hold that the trial court properly admitted the cocaine seized from the console compartment.

(II) Was defendant entitled to a mistrial after a juror saw him in the custody of a sheriff's deputy?

**[2]** We answer: No, because defendant has shown no abuse of discretion by the trial judge, and no evidence of serious improprieties that would have made it impossible for defendant to receive a fair and impartial verdict.

"The judge must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." N.C. Gen. Stat. § 15A-1061 (2001). However, the decision to order a mistrial lies within the discretion of the trial judge, reviewable only for gross abuse of discretion. *See State v. Pakulski*, 319 N.C. 562, 568, 356 S.E.2d 319, 323 (1987), *decision reversed on other grounds*, 326 N.C. 434, 390 S.E.2d 129 (1990); *State v. Darden*, 48 N.C. App. 128, 268 S.E.2d 225 (1980). A mistrial is generally granted where there have been improprieties in the trial of such a serious nature, that defendant cannot receive a fair and impartial verdict. *State v. Davis*, 130 N.C. App. 675, 679, 505 S.E.2d 138, 140 (1998); *State v. Cagle*, 346 N.C. 497, 516, 488 S.E.2d 535, 548 (1997).

The evidence in this case shows that during a lunch break, juror number five informed the trial judge that he had inadvertently seen defendant in the custody of a deputy. The trial judge immediately inquired of the juror whether he had in any way discussed his observations with other jurors. The juror answered that he did not. The

trial judge, outside the presence of the jury, informed defendant, defendant's counsel and the assistant district attorney of what juror number five told him. Defendant's counsel asked the trial judge if she could question the remaining jurors to see if they had any contact with defendant. On questioning by the trial judge, the remaining jurors denied having observed defendant or having any discussions with juror number five. No objections were raised by defendant's counsel as to the nature or extent of the questioning by the trial court. After the trial court denied defendant's motion for a mistrial, the trial court *sua sponte* substituted an alternative juror for juror number five.

In a similar case, *State v. Boykin,* our Court upheld the trial court's denial of a motion for mistrial based on evidence that one juror saw the defendant removed from the courtroom in handcuffs. 78 N.C. App. 572, 337 S.E.2d 678 (1985). In *Boykin,* the trial court polled the jurors as to what they had seen, as in the present case, the trial judge asked counsel if they had any questions and they indicated that they did not have any. Likewise, the trial judge excused the single juror. As in *Boykin,* because defendant has shown no abuse of discretion by the trial judge and no serious improprieties that would make it impossible for him to receive a fair and impartial verdict, we reject this assignment of error. *See State v. Blackstock,* 314 N.C. 232, 243, 333 S.E.2d 245, 252 (1985).

(III) <u>Did the trial judge err in conducting a private unrecorded conference with the juror who saw defendant in custody</u>?

[3] We answer: No, because defendant's failure to object in apt time to alleged procedural irregularities or improprieties constituted a waiver, and even if there was no waiver, defendant has failed to show prejudice.

On the issue of waiver, our Supreme Court reached the same result in *State v. Tate,* 294 N.C. 189, 198, 239 S.E.2d 821, 827 (1978):

> We are of the opinion that the trial court's private conversations with jurors were ill-advised. The practice is disapproved. At least, the questions and the court's response should be made in the presence of counsel. The record indicates, however, that defendant did not object to the procedure or request disclosure of the substance of the conversation. Failure to object in apt time to alleged procedural irregularities or improprieties constitutes a waiver.

Likewise, in this case, we disapprove of the trial judge's private conversation with juror number five; but, defendant did not object to the procedure, and in this case, the trial judge did disclose the substance of the conversation. In fact, after immediately conveying the substance of his conversation with juror number five to defendant's attorney and the assistant district attorney, the trial judge gave both parties an opportunity to inquire further of juror number five. Defendant's attorney requested further questioning of the other jurors but did not object to the trial judge's conversation with juror number five nor request further questioning of that particular juror. Thus, as in *Tate*, defendant's failure to object in apt time to alleged procedural irregularities or improprieties constituted a waiver.

Furthermore, the record shows that the trial judge questioned the other jurors to find out if they knew about juror number five's inadvertent observation; and subsequently, dismissed juror number five and replaced him with an alternative juror. Thus, even assuming *arguendo*, that such conversation between the trial judge and juror number five constituted error, it was harmless error because the proceedings could not in any manner affected the jury's verdict. *See State v. Hudson*, 331 N.C. 122, 415 S.E.2d 732 (1992) (a trial judge's chance encounter in a corridor with a juror during a recess in a defendant's trial was not a "proceeding" within the meaning of N.C. Gen. Stat. § 15A-1241, and therefore need not be recorded); *State v. Huff*, 325 N.C. 1, 29, 381 S.E.2d 651 (1989) (Our Supreme Court held that it was harmless error to permit the defendant to be absent during a portion of the evidence because defendant was not prejudiced by his absence.).

For the foregoing reasons, we find that defendant received a fair trial, free from prejudicial error.

No prejudicial error.

Judges McCULLOUGH and BIGGS concur.