STATE OF NORTH CAROLINA
v.
GREGORY EDWARD STACEY
No. COA08-883
Court of Appeals of North Carolina.
Filed February 3, 2009
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General David L. Elliott, for the State.
Winifred H. Dillon for Defendant.
STEPHENS, Judge.
On 19 June 1995, Defendant was indicted for robbery with a dangerous weapon upon allegations that he stole in excess of $744.01 and a handgun with the use and threatened use of a handgun. At the time of the alleged offense, Defendant was seventeen years old. Defendant pled guilty to two counts of robbery with a dangerous weapon and was sentenced to 44-62 months in prison.
On 3 June 1999, Defendant was arrested on allegations that he stole $200.00 from a restaurant with the threatened use of a handgun. Subsequently, Defendant was indicted, pled guilty to two counts of robbery with a dangerous weapon, and was sentenced to 82-108 months in prison. On 2 November 2006, Defendant was arrested on charges that he robbed a bank. On 5 February 2007, Defendant was indicted for having attained the status of a violent habitual felon based upon his earlier convictions. On 26 February 2007, Defendant was indicted for robbery with a dangerous weapon on allegations that, on 27 October 2006, he stole $4,229.50 from Carolina Postal Credit Union with the threatened use of a firearm.
The matter was called for trial on 3 March 2008, and the State's evidence tended to show that Defendant robbed the bank with the threatened use of a firearm whereby the life of a bank teller was endangered. The jury convicted Defendant of the charge of robbery with a dangerous weapon, then convicted Defendant of having attained the status of a violent habitual felon. The trial court sentenced Defendant to life imprisonment without parole. Defendant appeals.

I. 404(b)
Defendant first argues that he is entitled to a new trial because the trial court erred in allowing into evidence testimony concerning a separate bank robbery allegedly committed by Defendant on 18 October 2006. Defendant argues that the challenged evidence was not substantially similar to the crime charged. We disagree.
Rule 404(b) provides that
[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.
N.C. Gen. Stat. § 8C-1, Rule 404(b) (2007). This rule
state[s] a clear general rule of inclusion of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but one exception requiring its exclusion if its only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.
State v. Coffey, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990) (quoted in State v. Al-Bayyinah, 356 N.C. 150, 154, 567 S.E.2d 120, 122 (2002)). "[T]he rule of inclusion described in Coffey is constrained by the requirements of similarity and temporal proximity." Al-Bayyinah, 356 N.C. at 154, 567 S.E.2d at 123 (citations omitted).
In the instant case, two Carolina Postal Credit Union ("Postal") tellers testified that Defendant robbed Postal on 27 October 2006. The first teller testified that Defendant approached her bank counter, rested a black semi-automatic handgun on the counter, and handed her a grocery bag. The other Postal teller testified that Defendant, upon handing the first teller the grocery bag, told the teller to "fill it up." The second teller also testified that Defendant drove away from Postal in a black Mitsubishi. Two Piedmont Aviation Credit Union ("Piedmont") bank tellers testified that, on 18 October 2006, nine days before Defendant robbed Postal, Defendant robbed Piedmont. Both Piedmont tellers identified Defendant as the person who robbed Piedmont. One Piedmont teller testified that Defendant approached her bank counter, placed a black semi-automatic handgun on the counter, handed her a grocery bag, and told her to "empty all of [her] money into the bag." The other Piedmont teller testified that Defendant drove away from Piedmont in a dark Mitsubishi Lancer. We hold that there was substantial evidence of similarity between the Piedmont robbery and the Postal robbery and, thus, that the trial court properly admitted the Piedmont tellers' testimony to show, inter alia, Defendant's identity as the perpetrator.
We further conclude that even if the trial court erred in admitting this evidence, Defendant cannot show that the error was prejudicial. See N.C. Gen. Stat. § 15A-1443 (2007). Both Postal tellers identified Defendant as the perpetrator of the offense. Defendant's fingerprints and DNA were discovered at Postal following the robbery. Moreover, Defendant was discovered in actual possession of "bait money"  identifiable U.S. currency placed into Defendant's grocery bag by one of the Postal tellers  upon his arrest. Defendant is not entitled to a new trial because of the trial court's admission of the Piedmont tellers' testimony.

II. Insufficient Evidence
Defendant next argues that he is entitled to a new trial because the trial court erred in denying his motion to dismiss the charge of robbery with a dangerous weapon based upon the insufficiency of the evidence. Specifically, Defendant argues that the State presented insufficient evidence that he endangered the life of a Postal teller and that he was the perpetrator of the offense. Again, we disagree.
Before this Court may order a new trial for a trial court's denial of a defendant's motion to dismiss for insufficient evidence, this Court must view the evidence in the light most favorable to the State and conclude that the State failed to present "substantial evidence" (1) of each essential element of the offense charged and (2) that the defendant was the perpetrator of the offense. State v. Barnes, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993). The essential elements of robbery with a dangerous weapon are as follows: (1) an unlawful taking of personal property from the person of or in the presence of another; (2) by use or threatened use of a dangerous weapon; (3) whereby the life of a person is endangered or threatened. N.C. Gen. Stat. § 14-87 (2007); State v. Small, 328 N.C. 175, 181, 400 S.E.2d 413, 416 (1991).
In this case, one of the Postal tellers testified that Defendant held his gun pointed "[t]owards" her and "[p]ointed at" her. The teller also testified that she was "[t]errified." Defendant's argument that the State presented insufficient evidence that he endangered the life of a teller in the course of the robbery is meritless, as is Defendant's argument that the State presented insufficient evidence that he was the perpetrator of the offense. Even disregarding the 404(b) evidence discussed above, both Postal tellers identified Defendant as the perpetrator of the offense. Defendant's argument is overruled.

III. Jury Deliberations
Next, Defendant argues that he is entitled to a new trial because the trial court abused its discretion in denying Defendant's motion for a mistrial after the jury twice informed the court that it could not reach a unanimous verdict. Defendant contends that the trial court required the jury to deliberate for an unreasonable amount of time and that the trial court thus "coerced" a verdict from the jury. We disagree.
A trial judge "may not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals." N.C. Gen. Stat. § 15A-1235(c) (2007). "'[T]his statute does not mandate the declaration of a mistrial; it merely permits it.'" State v. Replogle, 181 N.C. App. 579, 583, 640 S.E.2d 757, 760 (2007) (quoting State v. Darden, 48 N.C. App. 128, 133, 268 S.E.2d 225, 228 (1980)). "In fact, `the action of the judge in declaring or failing to declare a mistrial is reviewable only in case of gross abuse of discretion.'" Id.
In this case, the jury began its deliberations at 10:38 a.m. on 5 March 2008 and, following a lunch recess, deliberated for the remainder of the day. The jurors resumed deliberations at 9:30 a.m. on 6 March 2008 and advised the trial court at 9:43 a.m. that they were unable to reach a unanimous verdict. The trial court then gave the jurors the following Allen charge:
Good morning. Good to see all of you all. I understand from the Sheriff that you all are having some trouble coming to a verdict. Let me tell you, I want to emphasize the fact that it is your duty to do whatever you can to reach a verdict. You should reason the matter over together as reasonable men and women and try to reconcile your differences, if you can, without the surrender of conscientious convictions. But no juror should surrender his or her honest conviction as to the weight or effect of the evidence solely because of the differing opinion of his fellow jurors or for the mere purpose of returning a verdict. In the course of your deliberations you should not hesitate to re-examine your views and change your opinion, if it is erroneous. Each of you must decide the case for yourselves, but only after an impartial consideration of the evidence with your fellow jurors. You all have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to your individual judgment.
See N.C. Gen. Stat. § 15A-1235(b) (2007). The jury resumed deliberations at 9:52. Following the lunch break, the jury sent the trial court a note at 2:50 which stated as follows:
Judge,
We performed a closed tally to see if we all want to discuss the case further. Not all jurors agreed we are a hung jury. Maybe not all of us understand what a reasonable doubt is.
We have also taken a closed tally on the verdict. And we have yet to agree. Any assistance would be helpful.
The trial court then instructed the jury as follows:
Okay, good to see y'all. Thank you for your hard work so far. I received a note . . . .
Taking note of the sentence that says maybe not all of us understand what a reasonable doubt is, I'm going to re-read a portion of the instruction to you.
A reasonable doubt is a doubt based on reason and common sense arising out of some or all of the evidence that has been presented or a lack or insufficiency of the evidence as the case may be. Proof beyond a reasonable doubt is proof that fully satisfies or entirely convinces you of the Defendant's guilt.
You all can return to the jury room and resume your deliberations.
The jury resumed deliberations at 2:57 and returned with its verdict at 4:15 p.m.
Considering the totality of the circumstances, the trial court's decision to deny Defendant's motion for a mistrial was notan abuse of discretion, nor did the decision result in a coerced verdict. We are not persuaded by Defendant's statement in his brief that "[r]equiring the jury to deliberate past the point where the jury informed the judge the second time that it was deadlocked was per se unreasonable[.]" Defendant presents no authority in support of this statement, and our Supreme Court has rejected a similar argument. State v. Fowler, 312 N.C. 304, 308-09, 322 S.E.2d 389, 392 (1984) (rejecting an argument that a judge's question to a jury constituted a per se violation of Article I, Section 24 of the North Carolina Constitution and stating that "[t]he appropriate standard is whether in the totality of the circumstances the inquiry is coercive.") (citations omitted). Defendant's argument is overruled.

IV. Cruel and Unusual Punishment
Finally, Defendant argues that the imposition of the sentence of life imprisonment without parole constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. Although Defendant did not articulate this objection in the trial court, this argument is preserved for our review pursuant to N.C. Gen. Stat. § 15A-1446(d)(18) (2007). State v. Borges, 183 N.C. App. 240, 245, 644 S.E.2d 250, 254, disc. review denied, 361 N.C. 570, 650 S.E.2d 816 (2007), cert. denied, ___ U.S. ___, 169 L. Ed. 2d 776 (2008). Alleged violations of a defendant's constitutional rights are ordinarily reviewed de novo on appeal. State v. Rogers, 352 N.C. 119, 124, 529 S.E.2d 671, 674-75 (2000). The offense of robbery with a dangerous weapon is a violent felony. N.C. Gen. Stat. §§ 14-87, 14-7.7(b) (2007). "Any person who has been convicted of two violent felonies in any federal court, in a court of this or any other state of the United States, or in a combination of these courts is declared to be a violent habitual felon." N.C. Gen. Stat. § 14-7.7(a) (2007). "A person who is convicted of a violent felony and of being a violent habitual felon must, upon conviction (except where the death penalty is imposed), be sentenced to life imprisonment without parole." N.C. Gen. Stat. § 14-7.12 (2007).
This Court has specifically rejected Defendant's argument that a life sentence under this statutory scheme violates the Eighth Amendment. State v. Mason, 126 N.C. App. 318, 321, 484 S.E.2d 818, 820 (1997), cert. denied, 354 N.C. 72, 553 S.E.2d 208 (2001). See also State v. Todd, 313 N.C. 110, 118, 326 S.E.2d 249, 253 (1985) (holding that a life sentence under the habitual felon statute does not violate the Eighth Amendment). Defendant's argument that "the circumstances of this case present the kind of `exceedingly unusual' situation which falls within the ambit of [State v. Ysaguire, 309 N.C. 780, 309 S.E.2d 436 (1983),]" is misplaced. In Ysaguire, the Supreme Court held "that the imposition of consecutive sentences for the crimes of rape, first degree sex offense, first degree burglary and armed robbery violates neither the Fair Sentencing Act nor any constitutional proportionality requirement." 309 N.C. at 787, 309 S.E.2d at 441. The Supreme Court did not analyze whether there were unusual circumstances in that case which rendered the imposition of a life sentence under the violent habitual felon statute violative of the Eighth Amendment. Notably, the violent habitual felon statute was enacted ten years after Ysaguire was decided. Defendant's argument is without merit and is overruled. Mason, 126 N.C. App. at 321, 484 S.E.2d at 820.
We do not address Defendant's contention that the violent habitual felon statute violates the due process, equal protection, and double jeopardy clauses of the United States and North Carolina Constitutions. Defendant acknowledges that these issues have been decided adversely to him in Mason, supra, and states that he "raises these claims for preservation purposes." Nor do we address assignments of error set out in the record on appeal but not brought forward in Defendant's brief. Such assignments of error are deemed abandoned. N.C. R. App. P. 28(b)(6).
NO ERROR.
Judges STEELMAN and GEER concur.
Report per Rule 30(e).