STATE OF NORTH CAROLINA v. LARRY MACKEY

No. COA09-1382

(Filed 4 January 2011)

**1. Sentencing— aggravating factors—insufficient notice**

The trial court erred in sentencing defendant in the aggravated range for three charges of discharging a weapon into an occupied property where the State failed to provide defendant proper written notice of its intent to prove aggravating factors for sentencing. The State's letter to defendant regarding plea negotiations did not provide sufficient notice under N.C.G.S. § 15A-1340.16.

**2. Search and Seizure— standing—passenger in vehicle—no possessory interest**

The trial court did not err in concluding that defendant lacked standing to challenge the search of a vehicle in which he was a passenger and in denying his motion to suppress evidence obtained from the search. Defendant did not own the vehicle and he asserted no possessory interest in the vehicle or its contents.

Appeal by defendant from judgments entered 14 May 2009 by Judge Clifton E. Johnson in Mecklenburg County Superior Court. Heard in the Court of Appeals 25 March 2010.

*Attorney General Roy Cooper, by Special Deputy Attorney General Marc Bernstein, for the State.*

*Geoffrey W. Hosford for defendant appellant.*

HUNTER, JR., Robert N., Judge.

Larry Mackey ("defendant") appeals his convictions for three counts of discharging a weapon into occupied property and one count of assault with a deadly weapon. On appeal, defendant contends that the trial court erred by permitting a plea agreement to constitute proper notice of the State's intention to seek an aggravated sentence range and by denying his motion to suppress evidence based on his contention that the arresting officer exceeded the scope of a lawful search incident to arrest. After review, we hold that defendant received a trial free of prejudicial error.

## I. Factual Background

Arlysa Ferguson dated defendant for over two years. On 20 August 2007, defendant called Ms. Ferguson on her home phone several times during the day but could not reach her. Defendant wanted to retrieve a cell phone and some of his personal belongings from Ms. Ferguson's home. Defendant finally spoke with Ms. Ferguson after she returned home later that day. Defendant arrived at Ms. Ferguson's house, but Ms. Ferguson refused to come outside to see him. However, they continued to speak by phone. Ms. Ferguson and defendant argued about a cell phone that he had purchased for her. Defendant wanted the phone returned, but Ms. Ferguson refused to go outside. Instead, she asked her brother Paxton to go outside and return the phone to defendant.

When Paxton returned, defendant again asked Ms. Ferguson to come outside and talk to him. When she again refused, defendant began shooting a gun into the sunroom where Ms. Ferguson was located. Ms. Ferguson testified that defendant "pulled the gun out and started shooting . . . [and that she] tried to run and get away." Ms. Ferguson heard three or four shots fired into the sunroom located at the back of the house. Subsequently, she heard two shots fired toward the front of the home. Ms. Ferguson did not directly observe defendant fire those shots, but she testified she heard him yelling while he was running away.

At the time the shots were fired, there were four people inside the home. Defendant was the only person outside the home. Ms.

Ferguson testified that after the gunfire ceased, she was crying and stated that defendant shot her. Someone called the police, and Officer T.J. Farmer responded to the call regarding the shooting at Ms. Ferguson's home.

Upon entering the residence, Officer Farmer found Ms. Ferguson hysterical and holding a bloody towel on her left leg. There were drops of blood and shattered glass on the floor and holes in the walls. Ms. Ferguson reported to Officer Farmer that her ex-boyfriend, defendant, had been calling her all day and had finally come over to her residence. She further indicated that the shots were fired while defendant was outside the home. Ferguson was treated at the hospital where x-rays indicated that she had a bullet lodged in her leg. At the time of trial, Ferguson had a scar from the wound. The shooting also left several bullet holes in the house. Three bullet casings were recovered from inside the sunroom by investigators.

On 31 August 2007, approximately eleven days after the shooting, Officer George Nickerson, Jr., of the Charlotte-Mecklenburg Police Department executed a traffic stop after observing a vehicle run a red light. There were two individuals in the vehicle, the driver and defendant. Defendant was sitting in the front passenger seat. Following the stop, the driver and defendant each gave Officer Nickerson a fictitious name. In addition, the driver did not possess a driver's license. At this time, Officer Nickerson noticed a strong odor of unburned marijuana emanating from the vehicle, and subsequently told defendant and the driver to exit the vehicle so that he could execute a search of the vehicle. At this point, defendant was patted down to make sure he had no weapons on his person. Defendant was not arrested but was informed by Nickerson that he could not leave. While the vehicle was searched, defendant was not handcuffed and was less than "six feet from the vehicle." During the search, Officer Nickerson found a loaded Smith and Wesson Model No. 915 firearm under the rear seat. Defendant was arrested at the conclusion of the search.

Firearms expert William McBrayer analyzed the three casings found at Ms. Ferguson's home and the weapon recovered from the vehicle. Mr. McBrayer testified that he had no doubt that the three cartridge casings found at the scene were expelled from the recovered Smith and Wesson Model No. 915 weapon when the weapon was fired. Defense counsel objected to McBrayer's testimony regarding the evidence seized from the vehicle during the search incident to defendant's arrest and made a motion to suppress such

evidence. The trial court denied defendant's motion to suppress and concluded that defendant had no reasonable expectation of privacy to confer standing to contest the search under the Fourth Amendment because defendant did not have a possessory or ownership interest in the vehicle.

Defendant chose not to present evidence and pled not guilty. The jury was properly instructed by the trial court. Following deliberation, the jury convicted defendant of three counts of discharging a weapon into occupied property and one count of assault with a deadly weapon. During defendant's sentencing hearing, the State asserted that it intended to seek a sentence in the aggravated range. Defense counsel objected and asserted that the State did not provide adequate notice that it intended to seek a sentence in the aggravated range for defendant. In response, the State contended that it had given defense counsel written notice of its intent to seek an aggravated sentence at a previous proceeding; however, the district attorney could not recall the date of the proceeding. No written notice was contained in the record on appeal. Defense counsel's objection was overruled by the trial court. During the sentencing hearing, the jury found as an aggravating factor that defendant committed the crimes for which he was convicted while on pretrial release on another charge.

The court then determined the prior record level for felony sentencing and prior conviction level for misdemeanor sentencing purposes to be a total of 6 points, based upon a prior felony conviction for common law robbery (4 points) and two prior misdemeanor convictions for assault on a female (2 points).

The court consolidated two counts of discharging a weapon into occupied property and sentenced defendant to 42 to 60 months' imprisonment. On the third count, the court sentenced defendant to 30 to 45 months' imprisonment to begin at the end of the consolidated sentences. Defendant was also sentenced to 75 days' imprisonment for the assault with a deadly weapon conviction. Defendant timely filed notice of appeal with this Court on 14 May 2009.

## II. Notice of Intent to present Aggravating Factors

[1] Defendant alleges that the State failed to give him proper written notice of its intent to prove aggravating factors for sentencing pursuant to N.C. Gen. Stat. § 15A-1340.16 (2007) for the three charges of discharging a weapon into an occupied property. We agree.

Alleged statutory errors are questions of law, *State v. Hanton*, 175 N.C. App. 250, 255, 623 S.E.2d 600, 604 (2006), and as such, are reviewed *de novo*. *Staton v. Brame*, 136 N.C. App. 170, 174, 523 S.E.2d 424, 427 (1999). Section 15A-1340.16(a6) states:

The state must provide a defendant with written notice of its intent to prove the existence of one or more aggravating factors under subsection (d) of this section or a prior record level point under G.S. 15A-1340.14(b)(7) at least 30 days before trial or the entry of a guilty or no contest plea. A defendant may waive the right to receive such notice. The notice shall list all the aggravating factors the State seeks to establish.

The plain language of the statute requires the State to provide written notice at least 30 days prior to trial of each aggravating factor it seeks to prove.

On appeal, defendant contends that he was improperly sentenced in the aggravated range because the State did not provide proper notice of its intent to present evidence of aggravating factors as required by N.C. Gen. Stat. § 15A-1340.16(a6). The State contends that a letter regarding plea negotiations sent by the State to defendant around 18 October 2007 provided defendant with timely and sufficient written notice of the State's intent to prove the existence of aggravating factors. Defendant acknowledges that plea negotiations occurred but claims that the 18 October 2007 letter did not provide notice that the State intended to present certain aggravating factors. In addition, defendant objected before the trial court to use of the aggravating factor based upon lack of written notice, so he clearly did not waive notice.

The amended record contains a document the State provided defense counsel entitled "Re: State of North Carolina v. LARRY MACKEY Comp. # 07-0820-204003." This document transmitted an "offer" in which the State proposed it would drop the charges contained in No. 07CRS238913, assault with a deadly weapon with intent to kill inflicting serious injury, if defendant would plead guilty to discharging a firearm into occupied property in No. 07CRS238912. The document also indicates the State would have recommended that the court impose an active sentence of 30 to 45 months because the plea of guilty would result in the conviction of the felony listed above at Prior Level III. At the bottom of this form the offer contains the following language:

Defendant qualifies for aggravated sentencing under 15A-1340.16(d)(8)—creating great risk of death to multiple people 15A-1340.16(d)(12)—offense committed while on pre-trial release 06 CR 257063

This form indicates to a recipient two possible aggravators in connection with this offer: (a) creating great risk of death to multiple people and (b) offense committed while on pretrial release. It does not communicate that in all future discussions these aggravators will be proffered to the court.

The State argues that since the plea offer contained a listing of aggravating factors and prior record level it contended would be submitted with its plea, that this would be substantial compliance with the statutory requirements of N.C. Gen. Stat. § 15A-1340.16(a6) cited above.

We disagree. First, the statutory notice required to notify the defendant of the State's intent to use aggravating factors requires the State to give the defendant notice pursuant to N.C. Gen. Stat. § 15A-1340.16(a6). Nowhere in the document does the plea offer acknowledge that the purpose of the document was to both give notice of aggravating factors *and* communicate an offer. So far as a recipient of this document would be concerned, the language would only communicate a plea offer and nothing more.

In addition, whether defendant's counsel was properly served by the use of a facsimile machine is problematic. For example, the Administrative Office of the Courts has promulgated a Form No. AOC-CR-614 Rev. (3/07), existing at the time, which provides the district attorney with the appropriate statutory language and means of service which complies with the statutory requirements of service of the document on counsel. This form provides that service can be obtained by mail, personal delivery, or by delivery to the office of the attorney. The record indicates a facsimile was sent, but at the trial, defense counsel represented that he had received the offer, but no notice of the aggravating factors. This representation was accurate based on our examination of the documents.

The State had at its disposal a form routinely used by prosecutors to comply with this minimal requirement. Therefore, it had the ability to comply with the statute using regular forms promulgated for this specific purpose by the Administrative Office of the Courts. We are not convinced by the document produced by the State that adequate

notice was provided to defendant as is required by statute. The argument of the State is not persuasive that its intent to communicate a plea offer was also intended to comply with the N.C. Gen. Stat. § 15A-1340.16(a6). Accordingly, we hold that the trial court erred by sentencing defendant in the aggravated range based upon the State's failure to provide proper written notice to defendant. We therefore reverse the sentence of the trial court as to defendant's convictions of discharging a weapon into an occupied property and remand to the trial court for resentencing.

### III. Motion to Suppress

#### A. Standard of Review

The standard of review on appeal from a defendant's motion to suppress is limited to determining whether the trial court's findings are supported by competent evidence, in which case they are binding on appeal, and whether those findings support the trial court's conclusions of law. *State v. Hendrickson*, 124 N.C. App. 150, 153, 476 S.E.2d 389, 391 (1996).

"If no exceptions are taken to findings of fact, 'such findings are presumed to be supported by competent evidence and are binding on appeal.'" *State v. Baker*, 312 N.C. 34, 37, 320 S.E.2d 670, 673 (1984) (citation omitted). Defendant has not assigned error to any of the trial court's findings of fact, so the findings are all binding on appeal. Our only inquiry is whether the findings of fact support the conclusions of law.

With regard to defendant's standing to challenge the legality of a search, the burden rests with defendant to prove that he had a legitimate expectation of privacy in the item that was searched. *Rawlings v. Kentucky*, 448 U.S. 98, 104, 65 L. Ed. 2d 633, 642 (1980).

#### B. Analysis

[2] We first determine whether defendant had standing to contest the search of the vehicle by Officer Nickerson. The trial court made the following uncontested findings of fact which are pertinent to defendant's standing to suppress the items found during the search of the vehicle.

1.  On August 31, 2007, Officer George Nickerson of the Charlotte Mecklenburg Police Department stopped a vehicle he observed run a traffic light.

2.  There were two occupants in the vehicle, the driver and the defendant riding in the front passenger seat. Officer Nickerson smelled the odor of marijuana coming from the vehicle.

3.  Officer Nickerson requested the driver to provide his drivers license and the vehicle registration. The driver was not able to provide either and stated that he had borrowed the vehicle from the owner. When asked his name (driver) and the name of the owner of the vehicle, the driver gave fictitious names.

. . . .

5.  The defendant also gave a fictitious name when he was asked to identify himself. Defendant was removed from the vehicle and seated on the curb about six feet away from the stopped vehicle.

6.  Officer Nickerson ran the vehicle tag number with the North Carolina Department of Motor Vehicles and discovered that the registration was not in either of the names given by the driver or the name given by the defendant.

7.  Officer Nickerson searched the vehicle and found a small bag under the rear back seat containing a hand gun and marijuana.

8.  Officer Nickerson later learned the true identity of the driver and defendant, neither of which matched the name of the registered vehicle owner.

9.  Defendant was neither the owner nor driver of the vehicle, but was merely a passenger.

10. Defendant has asserted neither an ownership nor a possessory interest in the vehicle.

11. Defendant has not asserted an ownership nor a possessory interest in the items of evidence seized.

Our Supreme Court has ruled that an occupant of a vehicle has standing to challenge the search of her purse. *See State v. Icard*, 363 N.C. 303, 677 S.E.2d 822 (2009). Based upon these findings of fact, the trial court then concluded that:

1.  Standing to claim the protection of the Fourth Amendment guaranty of freedom from unreasonable governmental searches and seizures is based upon the "legitimate expecta-

tions of privacy" of the individual asserting that right in the place which has allegedly been unreasonably searched.

2.  Defendant has the burden of demonstrating an infringement of his Fourth Amendment rights.

3.  Defendant has asserted neither an ownership nor a possessory interest in the vehicle.

4.  Defendant has neither asserted an ownership nor a possessory interest in any of the evidence seized.

5.  Fourth Amendment rights are personal rights which may not be "vicariously" asserted by another.

6.  The right to assert a violation of Fourth Amendment rights regarding a search and seizure of property from the vehicle in question, did not belong to the defendant who was not the owner of the vehicle or the driver, but was merely a passenger.

7.  Defendant had no "standing" or "legitimate expectations of privacy" with regard to the vehicle searched and the property seized.

Defendant assigns as error the trial court's conclusion that defendant "did not have standing to contest the search incident to arrest." He argues that the search of the vehicle was improper under *Arizona v. Gant*, 556 U.S. 332, 173 L. Ed. 2d 485 (2009), and *State v. Carter*, 200 N.C. App. 47, 682 S.E.2d 416 (2009). However, defendant also correctly acknowledges that neither *Gant* nor *Carter* addressed the issue of standing to contest the validity of a search. In those cases, standing was not addressed, as the defendants in each case clearly had standing. Here, we must first consider standing.

Although a passenger who has no possessory interest in the vehicle has standing to challenge the propriety of a stop of the vehicle, *Brendlin v. California*, 551 U.S. 249, 251, 168 L. Ed. 2d 132, 136 (2007) ("When a police officer makes a traffic stop, the driver of the car is seized within the meaning of the Fourth Amendment. . . . We hold that a passenger is seized as well and so may challenge the constitutionality of the stop."), or to challenge a "detention beyond the scope of the initial seizure," *State v. Jackson*, 199 N.C. App. 236, 241, 681 S.E.2d 492, 496 (2009), our Courts have never held that a passenger who has no possessory interest in the vehicle or contents has standing to challenge a *search* of the vehicle. Defendant here has not raised any argument regarding the propriety of Officer

Nickerson's *stop* of the vehicle for running a red light, only the subsequent search. This Court noted in *State v. VanCamp* that

> [t]he "rights assured by the Fourth Amendment are personal rights, [which] . . . may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure." Standing to claim the protection of the Fourth Amendment guaranty of freedom from unreasonable governmental searches and seizures is based upon the legitimate expectations of privacy of the individual asserting that right in the place which has allegedly been unreasonably invaded.

150 N.C. App. 347, 350, 562 S.E.2d 921, 924 (2002).

In *VanCamp*, the defendant was also a passenger who had no possessory interest in the vehicle. This Court held that

> [i]n its order denying defendant's motion to suppress, the trial court correctly concluded as a matter of law that defendant "as a mere passenger in the 1989 Acura, claiming no ownership or possessory interest therein, had no legitimate expectation of privacy in the center console of the vehicle, and therefore, has no standing to assert any alleged illegality of the search thereof."

*Id.* at 350, 562 S.E.2d at 925. In *State v. Warren*, our Supreme Court held that where the vehicle in which the defendant was a passenger was not owned by him, and he " 'specifically declined to come forward with any evidence of ownership or possession' of the automobile, the trial court was correct in concluding that defendant failed to show a legitimate expectation of privacy." 309 N.C. 224, 227, 306 S.E.2d 446, 449 (1983); *cf. State v. Greenwood*, 301 N.C. 705, 707-08, 273 S.E.2d 438, 440-41 (1981) (holding defendant failed to show search of a pocketbook that did not belong to defendant violated defendant's Fourth Amendment rights); *State v. Jones*, 299 N.C. 298, 261 S.E.2d 860 (1980); *State v. Alford*, 298 N.C. 465, 259 S.E.2d 242 (1979); *Icard*, 363 N.C. 303, 677 S.E.2d 822.

Based upon the uncontested findings of fact, defendant was a passenger who did not own the vehicle, and he asserted no possessory interest in the vehicle or its contents. Under *VanCamp* and *Warren*, the trial court properly concluded that the defendant did not have standing to challenge the search of the vehicle and denied his motion to suppress evidence obtained from the search. Because defendant did not have standing, we need not address defendant's arguments regarding the search.

## IV. Conclusion

After review, we conclude that the trial court erred by ruling that the State provided sufficient notice of its intent to seek an aggravated range sentence for defendant. However, we conclude that the trial court properly denied defendant's motion to suppress the evidence found in the vehicle during a lawful search incident to arrest. As such, we affirm the order of the trial court with regard to its ruling on defendant's motion to suppress, but vacate defendant's sentence and remand to the trial court for resentencing in accordance with this opinion.

Vacated and remanded.

Judges JACKSON and STROUD concurred prior to 31 December 2010.