STATE OF NORTH CAROLINA v. LAMONT DERRELL CARTER

No. COA07-1156-2

(Filed 15 September 2009)

**1. Search and Seizure— warrantless search—incident to arrest exception—automobile—papers on seat**

The search incident to arrest exception for warrantless searches and seizures did not apply to papers seized from the passenger seat of a vehicle where defendant was not within reaching distance of the passenger compartment of his vehicle at the time of arrest, nor was it reasonable for the officer to believe defendant's vehicle contained evidence of either offense for which he was arrested.

**2. Search and Seizure— warrantless search—plain view doctrine—automobile—papers on seat**

The plain view doctrine did not apply to papers seen by the officer on the seat of a car during a traffic stop that lead to an arrest. The officer did not immediately ascertain from plain view examination that the papers constituted evidence of a crime or contraband, and his suspicion that defendant was trying to conceal information on the papers was not sufficient to bypass the warrant requirement of the Fourth Amendment.

Appeal by defendant from order entered 31 January 2007 by Judge Ronald L. Stephens in Wake County Superior Court. Heard in the Court of Appeals 19 March 2008. Judgment vacated and remanded from the Supreme Court of the United States on 4 May 2009 upon defendant's petition for writ of certiorari.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Thomas J. Pitman, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellant Defender Benjamin Dowling-Sendor, for defendant-appellant.*

HUNTER, Robert C., Judge.

Lamont Derrell Carter ("defendant") appeals from the trial court's denial of his motion to suppress evidence obtained during a warrantless search of his vehicle subsequent to arrest. Defendant asserts that the search did not fall within one of the exceptions for warrant-

less searches and thus violated his rights under the Fourth Amendment of the United States Constitution.

When this Court previously decided this case, we found no constitutional violation and affirmed the trial court's order. *See State v. Carter*, 191 N.C. App. 152, 661 S.E.2d 895, *disc. review denied*, —— N.C. ——, 668 S.E.2d 341 (2008). Defendant subsequently appealed to the Supreme Court of the United States by writ of certiorari. On 4 May 2009, the Supreme Court vacated this Court's opinion and remanded for further consideration in light of its recent decision in *Arizona v. Gant*, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009). After careful review, and pursuant to the holding in *Gant*, we find the search of defendant's car to be unlawful and therefore find that the trial court erred in denying defendant's motion to suppress. Accordingly, we vacate the judgment and remand to the trial court for further proceedings not inconsistent with this opinion.

## Background

At the suppression hearing, the State's evidence tended to show that on 3 September 2003, Officer J.J. Yardley ("Officer Yardley") of the Raleigh Police Department was on patrol near the intersection of Longstreet and Stuart Streets, an area well known for criminal activity, including the sale of drugs. Officer Yardley was in a marked police cruiser, looking for vehicles not coming to a complete stop at the stop signs at the intersection and using a radar gun to enforce the twenty-five miles per hour speed limit. Around 1:30 a.m., Officer Yardley noticed defendant approaching a stop sign at the intersection in his vehicle. According to Officer Yardley's testimony, defendant then began turning right, which would have taken him toward the police cruiser; however, when his headlights fell on the police cruiser, defendant hesitated and then turned left, taking him away from the police cruiser. Officer Yardley then began to follow defendant. While following defendant, Officer Yardley noticed that defendant's registration for a temporary tag was old or worn. Officer Yardley activated his blue lights and pulled defendant over.

Officer Yardley approached the vehicle from the passenger side and asked defendant for his license and registration, which defendant gave him. Officer Yardley observed that the address on defendant's registration for the temporary tag did not match defendant's address on his driver's license and that the registration for the temporary tag had expired on 25 August 2003. Officer Yardley also observed several

STATE v. CARTER

[200 N.C. App. 47 (2009)]

whole pieces of paper lying on the passenger seat of the car and noticed that defendant seemed unusually nervous.

Officer Yardley returned to his police cruiser to call for backup before he initiated a full custody arrest of defendant. Officer Yardley decided to arrest defendant because of the late hour, defendant's evasive maneuver while driving, his nervousness during the stop, and ultimately, defendant's expired registration tag and the inconsistencies in defendant's addresses. Officer Yardley waited in his cruiser for backup to arrive, at which point he placed defendant under arrest for having an expired tag and for failing to notify the Division of Motor Vehicles of a change in address.

Subsequent to defendant's arrest, Officer Yardley conducted a search of defendant's car, during which he noticed that the papers in the passenger seat had been ripped into smaller pieces. Officer Yardley then began to piece the papers back together, at which point he was able to determine that one of them was a change of address form for an American Express Card belonging to Eric M. White. Officer Yardley questioned defendant about the papers, and defendant replied that they were " 'personal stuff.' " Yardley also asked who Eric White was, and defendant stated that he did not know what Yardley was talking about. After defendant was taken to jail, the remaining papers were pieced together and turned over to investigators.

Before trial, defendant made a motion to suppress the evidence obtained from the stop. The trial court denied the motion. On the basis of the papers and other evidence, defendant was charged with being an accessory after the fact to murder, financial identity fraud, and having attained habitual felon status. Defendant pled guilty to these charges, reserving the right to appeal the order denying his motion to suppress. He was sentenced to 522 months imprisonment. Defendant appealed the order denying his motion to suppress, and this Court affirmed the trial court's ruling on 17 June 2008. We now revisit the issue in light of the Supreme Court's recent decision in *Arizona v. Gant.*

## Analysis

Defendant's sole argument on appeal is that the papers seized in the search by Officer Yardley should have been suppressed because they were obtained through an illegal search and seizure. We agree.

The scope of this Court's review on appeal of a trial court's ruling on a motion to suppress "is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d. 618, 619 (1982); *see also State v. Barden*, 356 N.C. 316, 340, 572 S.E.2d 108, 125 (2002), *cert. denied*, 538 U.S. 1040, 155 L. Ed. 2d 1074 (2003). A trial court's conclusions of law are reviewable *de novo*. *State v. Barnhill*, 166 N.C. App. 228, 230, 601 S.E.2d 215, 217, *cert. denied*, 359 N.C. 191, 607 S.E.2d 646 (2004).

Contained in the trial court's order are the following conclusions of law: "[t]he papers initially seen in [1] plain view and later seized [2] pursuant to the arrest of the [d]efendant and [3] the search of his vehicle were seized lawfully and constitutionally[.]" Defendant argues that the papers were unlawfully seized because the search was conducted without a warrant and neither the search incident to arrest nor the plain view exceptions to the warrant requirement applied under the circumstances.

The following findings of fact are undisputed: defendant changed direction when he saw officer Yardley's police vehicle at the intersection; the area was a "moderately high crime area"; Officer Yardley began to follow defendant based on "the time of the day, the area, and the movement of the vehicle"; Officer Yardley observed that defendant's vehicle had an old or worn temporary tag with an obscured expiration date; and Officer Yardley determined that defendant's temporary registration and plate expired on 25 August 2003. Defendant did not assign error to these findings; thus, they are binding on appeal. *See, e.g., State v. Pendleton*, 339 N.C. 379, 389, 451 S.E.2d 274, 280 (1994), *cert. denied*, 515 U.S. 1121, 132 L. Ed. 2d 280 (1995). Officer Yardley testified that he decided to arrest defendant based on these facts, as well as defendant's nervousness during their conversation.

A. Search Incident to Arrest

[1] When we previously considered the disputed conclusions of law in this case, we upheld the trial court's denial of defendant's motion to suppress based solely on the search incident to arrest exception to the warrant requirement, which provides:

Generally, warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment of the United States Constitution. However, a well-recognized exception to the

warrant requirement is a search incident to a lawful arrest. Under this exception, if the search is incident to a lawful arrest, an officer may "conduct a warrantless search of the arrestee's person and the area within the arrestee's immediate control."

*State v. Logner*, 148 N.C. App. 135, 139, 557 S.E.2d 191, 194 (2001) (citations and quotation omitted). The landmark case of *New York v. Belton*, 453 U.S. 454, 69 L. Ed. 2d 768 (1981), extended a search incident to a lawful arrest to vehicles and held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id.* at 460, 69 L. Ed. 2d at 775. This Court relied on *Belton* and its extensive progeny to justify the search and seizure of evidence in defendant's vehicle incident to his lawful arrest. *See, e.g., State v. Brooks*, 337 N.C. 132, 144, 446 S.E.2d 579, 587 (1994) ("If officers have probable cause to arrest the occupants, they may search—incident to that arrest—the entire interior of the vehicle, including the glove compartment, the console, or any other compartment, whether locked or unlocked, and all containers found within the interior."); *State v. Wrenn*, 316 N.C. 141, 147, 340 S.E.2d 443, 448 (1986) ("Once the officer made a lawful arrest in this case, he was authorized to search the passenger compartment of the vehicle."); *State v. VanCamp*, 150 N.C. App. 347, 352, 562 S.E.2d 921, 926 (2002) ("Our appellate courts recognize the authority of an officer to search, incident to an arrest, the entire interior of the vehicle, including the glove compartment, console, or other interior compartments."); *State v. Fisher*, 141 N.C. App. 448, 455, 539 S.E.2d 677, 682 (2000) ("It is well established that '[i]f officers have probable cause to arrest the occupants [of a vehicle], they may search—incident to that arrest—the entire interior of the vehicle . . . .' ") (citation omitted) (first alteration added).

Since our prior decision in this case, the Supreme Court of the United States has clarified its previous holding in *Belton* and struck down the broad reading of that decision on which so many courts in recent decades have relied. A broad reading of *Belton* would give police officers unlimited authority to search the passenger compartment of an automobile incident to its recent occupant's arrest, regardless of the arrestee's proximity to the vehicle. However, the Court held in *Arizona v. Gant* that "*Belton* does not authorize a vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle." *Gant*, 129 S. Ct. at 1714, 173 L. Ed. 2d at 491.

The Court noted that *Belton* was never intended to overrule *Chimel v. California*, 395 U.S. 752, 23 L. Ed. 2d 685 (1969). "Under *Chimel*, police may search incident to arrest only the space within an arrestee's immediate control, meaning the area from within which he might gain possession of a weapon or destructible evidence. The safety and evidentiary justifications underlying *Chimel's* reaching-distance rule determine *Belton's* scope." *Gant*, 129 S. Ct. at 1714, 173 L. Ed. 2d at 491. Therefore, *Belton* did not overrule *Chimel*, it merely extended the permissible search area to automobiles and provided a "workable definition of 'the area within the immediate control of the arrestee' when that area arguably includes the interior of an automobile." *Belton*, 453 U.S. at 460, 69 L. Ed. 2d at 774 (citation omitted).

The Court in *Gant* goes on to set out a two-prong test under which "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search *or* it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Gant*, 129 S. Ct. at 1723-24, 173 L. Ed. 2d at 501 (emphasis added).

In *Gant*, two police officers intended to arrest the defendant after coming in contact with him at a private residence, later conducting a records check on him, and discovering that there was an outstanding warrant for his arrest for driving with a suspended license. *Id.* at 1714-15, 173 L. Ed. 2d at 491. Upon returning to the residence where they previously saw the defendant, the officers arrested two other individuals for providing a false name and for possession of drug paraphernalia. *Id.* at 1715, 173 L. Ed. 2d at 491-92. Those individuals were handcuffed and secured in separate patrol cars. *Id.* at 1715, 173 L. Ed. 2d at 492. The officers then observed the defendant drive up to the residence, park, and exit his vehicle. *Id.* He was immediately arrested for the crime of driving with a suspended license, handcuffed, and secured in the back of a patrol car while officers proceeded to search his vehicle incident to the arrest. *Id.* Pursuant to their search, the officers found a gun and a bag of cocaine in a jacket pocket on the backseat, giving rise to charges of possession of a narcotic for sale and possession of drug paraphernalia. *Id.* Gant filed a motion to suppress, claiming that the evidence was the product of an unlawful search. *Id.* Gant's motion was denied by the trial court. *Id.* On appeal, the Arizona Supreme Court reversed the lower court's decision and held that defendant's motion to suppress should have been granted because "the search of Gant's car was unreasonable within the meaning of the Fourth Amendment." *Id.*

The Supreme Court of the United States upheld the Arizona Supreme Court's decision stating: "Neither the possibility of access nor the likelihood of discovering offense-related evidence authorized the search in this case." *Id.* at 1719, 173 L. Ed. 2d at 496. The Court compared Gant's case with the facts presented in *Belton* and *Thornton*[1] and reasoned, "[w]hereas Belton and Thornton were arrested for drug offenses, Gant was arrested for driving with a suspended license—an offense for which police could not expect to find evidence in the passenger compartment of Gant's car." *Id.*

In announcing the evidentiary prong of the *Gant* test, the Court acknowledged that "[i]n many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence." *Id.*; *see also Atwater v. Lago Vista,* 532 U.S. 318, 324, 149 L. Ed. 2d 549, 558-59 (2001); *Knowles v. Iowa,* 525 U.S. 113, 118, 142 L. Ed. 2d 492, 498-99 (1998).

A comparison of the present case with the facts of *Gant* indicates that the warrantless search of defendant's vehicle cannot be justified under either prong of *Gant's* test. In the case *sub judice*, defendant had been removed from the vehicle, handcuffed, and directed to sit on a curb at the time the vehicle was searched. There is no reason to believe defendant was within reaching distance or otherwise able to access the passenger compartment of the vehicle when the search commenced. Thus, the warrantless search of defendant's vehicle cannot be justified under the first prong of *Gant's* test.

Additionally, defendant was arrested for the traffic offenses of driving with an expired registration tag and failing to notify the Division of Motor Vehicles of a change of address. Officer Yardley did not testify that he believed that the papers were related to the offenses charged. Furthermore, it would be unreasonable to presume that papers seen on the passenger seat of the car were related to an expired registration or a failure to report a change of address to the Department of Motor Vehicles. Accordingly, we hold that the search of defendant's vehicle cannot be justified under the evidentiary prong of *Gant's* test.

Because defendant was not within reaching distance of the passenger compartment of his vehicle at the time of arrest, and because it was not reasonable for Officer Yardley to believe defendant's vehicle contained evidence of either offense of arrest, we hold, pur-

---

1. *Thornton v. United States,* 541 U.S. 615, 158 L. Ed. 2d 905 (2004).

suant to *Gant*, that the search incident to arrest exception for war-
rantless searches and seizures does not apply here.

### B. Plain View

**[2]** Since we formerly upheld the trial court's denial of defendant's
motion to suppress based on the search incident to arrest exception,
we declined to examine the applicability of the plain view exception
to this case. We do so now.

> One exception to the warrant requirement is the plain view
> doctrine, under which police may seize contraband or evidence if
> (1) the officer was in a place where he had a right to be when the
> evidence was discovered; (2) the evidence was discovered inad-
> vertently; and (3) it was immediately apparent to the police that
> the items observed were evidence of a crime or contraband.

*State v. Graves*, 135 N.C. App. 216, 219, 519 S.E.2d 770, 772 (1999); *see*
*State v. Mickey*, 347 N.C. 508, 516, 495 S.E.2d 669, 674, *cert. denied*,
525 U.S. 853, 142 L. Ed. 2d 106 (1998).

In *Graves*, a police officer interviewed the defendant, a shooting
victim, in a hospital emergency room in order to gather information
about the incident. *Id.* at 217-18, 519 S.E.2d at 771. During the inter-
view, several wads of brown paper fell out of the defendant's clothing
and onto the gurney. *Id.* at 218, 519 S.E.2d at 771. Without asking or
telling the defendant, the officer proceeded to unravel the wads of
paper. *Id.* He discovered a crack pipe, a brass screen, and crack
cocaine. *Id.* The defendant was arrested the following morning after
his release from the hospital. *Id.* at 218, 519 S.E.2d at 772. The defend-
ant was charged with "one count of felonious possession of cocaine,
one count of misdemeanor possession of drug paraphernalia, one
count of resisting a public officer, and to being an habitual felon." *Id.*
at 217, 519 S.E.2d at 771. Prior to pleading guilty, the defendant
moved to suppress the evidence, claiming that the items seized were
fruits of an unlawful search and did not fall within the plain view
exception to the search warrant requirement. *Id.* at 218, 519 S.E.2d at
772. His motion was denied by the trial court. *Id.*

On appeal this Court agreed with the defendant and overturned
the trial court's denial of the motion to suppress. *Id.* In so holding, we
found that the State had successfully established the first two prongs
of the plain view doctrine but had failed to satisfy the third prong of
the test because "[t]he State . . . failed to establish that it was imme-

diately apparent to the police officer that the items observed were evidence of a crime or contraband." *Id.* at 219, 519 S.E.2d at 772. In clarifying the "immediately apparent" requirement, we held that "the State must establish that, given the facts and circumstances of the case, and viewed through the eyes of a policeman with the experience and training of [the officer], the nature of the contents of the brown paper wads was immediately apparent." *Id.* at 219-20, 519 S.E.2d at 772-73. At the time the officer inadvertently discovered the paper wads, he was unable to discern whether the wads contained evidence of a crime or contraband. *Id.* at 220, 519 S.E.2d at 773. Only when the officer unraveled the papers was he able to determine what they contained. *Id.*

Here, Officer Yardley was clearly in a place where he had a right to be when he discovered the papers. He had approached defendant's vehicle from the passenger side, in the interest of safety, to inquire about the old and worn temporary tag on defendant's vehicle. He then inadvertently noticed several whole papers sitting in plain view on defendant's passenger seat. At that point, Officer Yardley had decided to return to his cruiser to radio another officer for backup to execute an arrest. When Officer Yardley returned to defendant's vehicle to arrest defendant, the previously intact papers on the passenger seat had been torn to pieces. It was at this point, when defendant made an obvious attempt to conceal the contents of the papers, that Officer Yardley became suspicious that the papers were evidence of criminal activity. Therefore, the first two prongs of the *Graves* test have been met in this case.

With regard to the third prong, the evidence in this case must be suppressed unless "it was immediately apparent to [Officer Yardley] that the items observed were evidence of a crime or contraband." *Id.* at 219, 519 S.E.2d at 772. The evidence tended to show that Officer Yardley was unable to determine the contents of the torn papers until he pieced them together. As in *Graves*, the criminal nature of the evidence was not immediately apparent to the officer upon plain view examination. "Without testimony regarding the immediately apparent nature of the contraband, the evidence obtained from [the] search cannot be used at defendant's trial." *Id.* at 220, 519 S.E.2d at 773; *see also State v. Sanders*, 112 N.C. App. 477, 483, 435 S.E.2d 842, 846 (1993).

Officer Yardley testified: "I just remember speaking as I was on the passenger side there was a, pieces of papers on the passenger seat. I didn't know what they were at the time, but they were com-

plete, I guess. They were whole. They weren't torn, or ripped, or anything." He further testified:

> While I was searching the vehicle[,] . . . I actually started placing the pieces of paper back together to see where they were torn up or what information may have been on it. And that's when I saw it was, it was a change of address form. And the name and the form was for Eric M. White, which obviously wasn't Mr. Carter. So, at that point I did ask about the piece of paper. He said 'it's just personal stuff.'

It is apparent from the officer's testimony that he did not immediately ascertain from plain view examination that the papers on defendant's front passenger seat constituted evidence of a crime or contraband. His suspicion that defendant was trying to conceal information on the papers was not sufficient to bypass the warrant requirement of the Fourth Amendment. "[T]he State cannot substitute speculation for evidence." *Id.* at 220, 519 S.E.2d at 773. Thus, the third prong of the plain view doctrine is not satisfied, and the contents of the papers cannot be admitted into evidence.

## Conclusion

In sum, we reverse the trial court's denial of defendant's motion to suppress evidence. Neither the search incident to arrest exception nor the plain view exception to the search warrant requirement applies, and therefore the evidence in this case was unlawfully obtained. Accordingly, we vacate the judgment entered and remand this case to the trial court for further proceedings not inconsistent with this opinion.

Vacated and Remanded.

Judges ELMORE and STROUD concur.