NO. COA13-461

NORTH CAROLINA COURT OF APPEALS

Filed: 18 March 2014

STATE OF NORTH CAROLINA

    v.

DARIUS CORDALE ALEXANDER,
       Defendant.

Catawba County
No. 10 CRS 57159

Appeal by defendant from judgment entered 17 August 2011 by Judge H. William Constangy in Catawba County Superior Court. Heard in the Court of Appeals 23 September 2013.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Angel E. Gray, for the State.*

> *Appellate Defender Staples Hughes, by Assistant Appellate Defender Jon H. Hunt and Assistant Appellate Defender Benjamin Dowling-Sendor, for defendant-appellant.*

GEER, Judge.

Defendant Darius Cordale Alexander appeals from an order denying, in part, his motion to suppress evidence seized during a warrantless search of a trailer parked in front of his mobile home. On appeal, defendant contends that the challenged search and seizure were not reasonable under the plain view doctrine because the criminal nature of the items was not immediately apparent and the officers did not have legal right of access to

the items seized.  We hold that the findings of fact support the trial court's conclusion that the criminal nature of the items was immediately apparent.  However, we remand for further findings of fact and conclusions of law regarding whether the officers had a lawful right of access to the items seized.

## Facts

The State's evidence tended to show the following facts. On the morning of 29 October 2010, Officer Stephanie Roberts of the Hickory Police Department responded to a reported theft of air conditioning copper coil at the Century Furniture Company. The maintenance supervisor, Bob Ledford, informed Officer Roberts that he had checked on the air conditioning units the previous day at around 4:30 p.m., but when he arrived that morning, he discovered that approximately 200 pounds of copper coil had been stolen.

After taking Mr. Ledford's statement, Officer Roberts called Mr. Caroll McKinney at McKinney Metals to determine if any coil had been sold to him in the previous 24 hours.  Mr. McKinney called Officer Roberts back at around 3:30 p.m. and informed her that coil matching the description and weight of the stolen property had been sold to him that day by defendant. Mr. McKinney provided Officer Roberts with defendant's name and driver's license number, the license plate number of the vehicle

defendant used to deliver the coil, and a physical description of defendant and his Infiniti SUV. Officer Roberts used defendant's driver's license number to locate defendant's address and determined that defendant lived in a mobile home in Hollar Mobile Home Park in Burke County.

Hollar Mobile Home Park has about 40 mobile homes on eight to 10 acres of land. There are two paved driveways that run through the park with mobile homes on either side, forming three rows of homes. The homes do not face towards the driveway, but instead are situated facing towards and parallel to the main road, which runs perpendicular to the paved driveways. In each row, there is a grassy area between each mobile home that constitutes the front yard of one home and the back yard of another. The homes are about 100 feet apart from one another, but there are no fences to separate one home from another.

When facing the park from the main road, defendant's mobile home is located in the outer left row of mobile homes. His front door faces the main road and is on the far right side of the mobile home, closest to the paved driveway. The door is accessible by walking up three steps to the front porch. The grassy area in front of his mobile home is bounded on the left by the wooded area bordering the mobile home park, the paved

driveway to the right, and, at the front, another empty mobile home closer to the main road.

Officer Roberts drove to the mobile home park to question defendant, arriving at around 4:14 p.m. She drove down the main road and came upon the park on her left. As she approached the park and passed the entrance to the first paved driveway on her left, she observed an Infiniti SUV matching the description given to her by Mr. McKinney with a black male behind the steering wheel. She pulled into the second entrance, parked her car, and walked back towards defendant's mobile home on foot.

Defendant's SUV and a wooden tow-behind trailer were parked on the far left side of the grassy area in front of defendant's mobile home. The SUV was parked alongside the mobile home with its headlights facing towards the mobile home park driveway. The SUV's tailgate was at the edge of the wooded area, and the license plate was not visible from the driveway. Next to the SUV, towards the empty mobile home and the main road, the trailer had also been backed up to the woods so that its license plate was not visible. The SUV was approximately 10 to 15 feet in front of the mobile home, and the trailer was approximately five feet away from the SUV. The trailer had two wheels and was no longer attached to a vehicle, so the trailer hitch was resting on the ground. This caused the bed of the trailer,

which was opened and uncovered, to tilt down in a forward angle towards the driveway.

Officer Roberts approached from the paved driveway on the right. When she reached the mobile home the vehicle was no longer occupied, so she believed that the individual she saw in the SUV had gone inside the mobile home. She walked up to the front porch and knocked on the door, but no one answered. When she turned around, she noticed the open tow-behind trailer parked in the front yard and saw that it contained pieces of air conditioning copper coil. She believed that the pieces of coil were scrap pieces of the coils that had been stolen and sold to Mr. McKinney.

After knocking on the door and getting no response, Officer Roberts walked down from the porch and over towards the wooded area to see behind the SUV and the tow-behind trailer to check the license plate numbers. The license plate on the SUV matched the license plate given to her by Mr. McKinney.

Officer Roberts radioed for assistance and also called Mr. Ledford. She asked Mr. Ledford to bring the ends of the copper coil that were left attached to the air conditioning units so that they could be compared to the pieces of coil in the trailer. While she was waiting for the other officers to

arrive, she took photographs of the mobile home, SUV, and trailer.

When Deputy Nathan Smith of the Burke County Sheriff's Office arrived, Officer Roberts again knocked on the front door of the mobile home while Deputy Smith knocked on the back door. Again, they did not get a response. However, as Deputy Smith walked to the front of the mobile home, he saw a child peeping through a curtain. Claiming concern for the welfare of the child, Deputy Smith's partner went to the mobile home park office to speak with the park manager about obtaining a key to the mobile home. At the officers' request, a maintenance man who worked at the park used the landlord's key to allow the officers into defendant's mobile home. The defendant and the child were found hiding behind a door in one of the bedrooms.

After determining that the child was okay, the officers questioned defendant about the larceny of the air conditioning coils. They also found and seized marijuana and a backpack that contained gloves, screwdrivers, pliers, and other tools. Officer Roberts placed defendant under arrest for larceny and breaking and entering. After defendant was placed under arrest, Mr. Ledford arrived and was able to identify the coils. Officer Roberts collected all of the pieces of coil from the trailer as evidence.

Defendant was indicted for felony larceny and misdemeanor possession of stolen goods. On 11 August 2011, defendant filed a motion to suppress all the evidence seized on 29 October 2010, including the copper coil in the trailer, and any statements made by defendant during the search of his mobile home. On 17 August 2011, following a hearing, the trial court entered an order concluding that the search and seizure of the coils were justified by the plain view doctrine, but that the warrantless entry into the mobile home was not justified by any exigent circumstances, the caretaker exception, or consent of the landlord. The trial court granted defendant's motion to suppress the evidence seized within the mobile home, but denied defendant's motion to suppress the coils seized outside the mobile home.

Thereafter, defendant entered a plea of no contest to felony possession of stolen goods, and the State dismissed the charges of felony larceny and misdemeanor possession of stolen goods. The trial court sentenced defendant to a presumptive-range term of 5 to 6 months imprisonment. The court suspended the sentence and placed defendant on 30 months of supervised probation.

After the entry of judgment, defendant gave oral notice of appeal of the partial denial of his motion to suppress. On 18

December 2012, this Court dismissed defendant's appeal for lack of jurisdiction for failure to give adequate notice of appeal from the trial court's judgment. *See State v. Alexander*, ___ N.C. App. ___, ___ S.E.2d ___, 2012 WL 6590077, 2012 N.C. App. LEXIS 1390 (Dec. 18, 2012) (unpublished). On 27 December 2012, defendant filed a petition for writ of certiorari to review the 17 August 2011 judgment, which this Court granted 14 January 2013.

## Discussion

The sole issue on appeal is whether the trial court erred in denying in part defendant's motion to suppress. "The scope of review of the denial of a motion to suppress is 'strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law.'" *State v. Bone*, 354 N.C. 1, 7, 550 S.E.2d 482, 486 (2001) (quoting *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)). Unchallenged findings of fact are binding on appeal. *State v. Lupek*, 214 N.C. App. 146, 150, 712 S.E.2d 915, 918 (2011). The trial court's conclusions of law are, however, reviewed de novo and "must be legally correct,

reflecting a correct application of applicable legal principles to the facts found." *State v. Fernandez*, 346 N.C. 1, 11, 484 S.E.2d 350, 357 (1997).

We first note that defendant, the State, and the trial court have all focused both on (1) whether Officer Roberts conducted a *search* justified by the plain view doctrine, and (2) whether the *seizure* of the copper coils was permissible under that doctrine. The trial court concluded: "Officer Roberts's warrantless examination of the contents of the trailer located adjacent to defendant's mobile home at [sic] WAS a reasonable search, justified by the plain view exception to the warrant requirement. Officer Roberts was lawfully present on the front porch when she inadvertently saw what she believed to be evidence of a crime." The trial court then upheld the seizure: "The examination by Officer Roberts of the tow-behind trailer located in the front yard and the seizure of the suspected stolen property DID NOT violate the defendant's rights under the Constitution of the United States of America or the Constitution of the State of North Carolina."

However, as the Fourth Circuit Court of Appeals has explained, "[t]he 'plain-view' doctrine provides an exception to the warrant requirement for the *seizure* of property, but it does not provide an exception for a search. Viewing an article that

is already in plain view does not involve an invasion of privacy and, consequently, does not constitute a search implicating the Fourth Amendment." *United States v. Jackson*, 131 F.3d 1105, 1108 (4th Cir. 1997). *See also Horton v. California*, 496 U.S. 128, 134 n.5, 110 L. Ed. 2d 112, 121 n.5, 110 S. Ct. 2301, 2306 n.5 (1990) ("'It is important to distinguish "plain view," . . . to justify *seizure* of an object, from an officer's mere observation of an item left in plain view. Whereas the latter generally involves no Fourth Amendment search, . . . the former generally does implicate the Amendment's limitations upon seizures of personal property.'" (quoting *Texas v. Brown*, 460 U.S. 730, 738 n.4, 75 L. Ed. 2d 502, 511 n.4, 103 S. Ct. 1535, 1541 n.4 (1983) (opinion of Rehnquist, J.))).

We therefore hold, as an initial matter, that the trial court erred in applying the plain view doctrine to the question whether Officer Roberts performed a lawful search when she observed the contents of the trailer from the front porch of the mobile home. The plain view doctrine applied only to the question whether Officer Roberts' warrantless seizure of the copper coils was permissible under the plain view doctrine.

Under the plain view doctrine, a warrantless seizure is lawful if (1) the officer views the evidence from a place where he has legal right to be, (2) it is immediately apparent that

the items observed constitute evidence of a crime, are contraband, or are subject to seizure based upon probable cause, and (3) the officer has a lawful right of access to the evidence itself. *State v. Nance*, 149 N.C. App. 734, 740, 562 S.E.2d 557, 561-62 (2002).

With respect to the first element of the plain view doctrine, defendant challenges the trial court's finding that Officer Roberts could see the coils from the porch -- a location where, defendant concedes, Officer Roberts had a legal right to be. *See State v. Prevette*, 43 N.C. App. 450, 455, 259 S.E.2d 595, 600-01 (1979) (holding officers legally entitled to be on front porch of defendant's house for purpose of conducting general inquiry or interview). The trial court's finding of fact was supported by Officer Roberts' testimony during cross-examination:

> Q. . . . You mentioned at some point that you knocked on a door eventually, correct?
>
> A. Yes, sir. . . . When I arrived and I seen the Infinity, I walked up on the porch. And when I did I could see over into that trailer -- into that hitch trailer. But I walked up and knocked on the door.
>
> Q. Okay.
>
> A. And that's when I could see inside that hitch trailer.
>
> Q. Okay. And after you did that did you proceed to go over and go behind the

automobile to see what tag --

A.    To check the plate, yes, sir.

Q.    Okay.    Did you go behind the -- You also went behind the hitch trailer to see if it had a tag on it.

A.    Yes, sir --

While defendant argues that this testimony does not establish that Officer Roberts could in fact see the coils in the trailer, the trial court's finding was a reasonable inference drawn from this testimony when considered together with Officer Roberts' direct examination.  Although defendant's interpretation of Officer Roberts' testimony may also be reasonable, it is the trial court who "passes upon the credibility of the witnesses and the weight to be given their testimony and the reasonable inferences to be drawn therefrom. If different inferences may be drawn from the evidence, he determines which inferences shall be drawn and which shall be rejected."  *Knutton v. Cofield*, 273 N.C. 355, 359, 160 S.E.2d 29, 33 (1968).  Because the evidence and reasonable inferences drawn from that evidence support the trial court's finding that Officer Roberts could see the copper coils from the porch, it is binding on appeal.

Defendant also challenges the sufficiency of the evidence to support the trial court's finding that Officer Roberts

"inadvertently" looked into the trailer from the front porch. This Court, however, has held that "inadvertence is not a necessary condition of a lawful search pursuant to the 'plain view' doctrine." *State v. Church*, 110 N.C. App. 569, 575, 430 S.E.2d 462, 465 (1993) (following *Horton*).[1] Because this finding of fact is, therefore, immaterial to the question whether the seizure was permissible under the Fourth Amendment, we need not address it.

Regarding the second element of the plain view doctrine, defendant argues that the trial court's findings of fact are insufficient to support a conclusion that it was "immediately apparent" to Officer Roberts that the coils were stolen. "The term 'immediately apparent' in a plain view analysis is satisfied only 'if the police have probable cause to believe that what they have come upon is evidence of criminal conduct.'" *State v. Graves*, 135 N.C. App. 216, 219, 519 S.E.2d 770, 772 (1999) (quoting *State v. Wilson*, 112 N.C. App. 777, 782, 437 S.E.2d 387, 389-90 (1993)). When, as here, the item in plain view is considered contraband based solely upon its status as a

---

[1]Nevertheless, many cases subsequent to *Church* have continued to articulate the three factor test for the plain view doctrine which includes inadvertency. Inadvertence is required pursuant to N.C. Gen. Stat. § 15A-253 (2013), which applies to items found in plain view during the execution of a valid search warrant. Because Officer Roberts did not discover the coil while executing a search warrant, N.C. Gen. Stat. § 15A-253 is inapplicable to this case.

"stolen good," whether its criminal nature is immediately apparent to an officer depends upon the interplay between extrinsic circumstances known to the officer prior to discovery of the item and the officer's observations of the item's characteristics. *See State v. Connard*, 81 N.C. App. 327, 330, 344 S.E.2d 568, 571 (1986) ("Stolen goods . . . do not qualify automatically as contraband, but generally are innocuous except for the extrinsic circumstance that they have been stolen.").

This Court has held that it was immediately apparent that an item in plain view was evidence of a crime when the officer viewed an item that matched the description of an item he knew to be stolen. *See, e.g.*, *State v. Haymond*, 203 N.C. App. 151, 161, 691 S.E.2d 108, 118 (2010) (immediately apparent microwave, refrigerator, and dishwasher stolen when officer immediately recognized the appliances as those from break-in he was investigating based on officer's recollection of what stolen items looked like); *State v. Weakley*, 176 N.C. App. 642, 649, 627 S.E.2d 315, 320 (2006) (immediately apparent shower curtain contraband when curtain matched pictures of stolen curtain officer had seen).

We find that the circumstances of this case are analogous to those in *State v. Bembery*, 33 N.C. App. 31, 234 S.E.2d 33 (1977). In *Bembery*, a car dealer discovered that someone had

stolen tires from a truck on his lot and provided a description of the stolen tires, including the type and size, to the county sheriff, who relayed the information to the sheriff in a neighboring county. *Id.* at 32, 234 S.E.2d at 34. Four days later, the sheriff in the neighboring county received a call from a reliable informant that two of the stolen tires were in the possession of the defendant and that the defendant was at a friend's house. *Id.* The sheriff drove to the house about 40 minutes later, where he found the defendant getting ready to put tires on his car. *Id.* The tires were in plain view and matched the description given by the car dealer. *Id.* The Court held that "[i]n these circumstances, the seizure of the tires for the purpose of taking them to [the car dealer] for identification was reasonable." *Id.* at 36, 234 S.E.2d at 37.

Here, the trial court's findings of fact establish that Officer Roberts was investigating a recent theft of air conditioning copper coil and was given the description and weight of the stolen coil. Officer Roberts, like the officer in *Bembery*, received reliable information that the defendant was recently in possession of the stolen goods -- a local metal recycler informed Officer Roberts that coil matching the description and weight of the stolen coil had been sold to the recycler by defendant earlier that day. The metal recycler

provided Officer Roberts with defendant's name and driver's license number, the license plate number of the vehicle used to deliver the coil, and a physical description of defendant and his vehicle.

Officer Roberts used the information from the metal recycler to locate defendant's residence, where she saw a parked vehicle matching the description given to her by the metal recycler with a black male behind the steering wheel. From the front porch of defendant's mobile home, Officer Roberts noticed air conditioning copper coil in the open-tow trailer parked next to defendant's SUV. As in *Haymond*, *Weakley*, and *Bembery*, the items viewed by Officer Roberts matched the description of goods she knew to be stolen.[2] Furthermore, the additional information Officer Roberts had gathered from her investigation after speaking to the metal recycler bolstered her belief that the items in the trailer were stolen. These findings sufficiently support the conclusion that it was immediately apparent to Officer Roberts that the coils were evidence of a crime.

---

[2]Although the trial court's finding that Officer Roberts believed the coils to be evidence of a crime is found in conclusion of law #1, we treat it as a finding of fact. *See Gainey v. N.C. Dep't of Justice*, 121 N.C. App. 253, 257 n.1, 465 S.E.2d 36, 40 n.1 (1996) ("Although denominated as a conclusion of law, we treat this conclusion as a finding of fact because its determination does not involve the application of legal principles.")

Nevertheless, defendant argues that Officer Roberts merely suspected that the coils were stolen, but did not have the level of certainty required to rise to the level of probable cause. Defendant points to the trial court's finding that Officer Roberts called the factory manager, Mr. Ledford, to ask him to come and identify the pieces of scrap metal, and analogizes these facts to cases in which the criminal nature of an item seized by an officer was not apparent until the officer further manipulated the item. *See State v. Sapatch*, 108 N.C. App. 321, 325, 423 S.E.2d 510, 513 (1992) (criminal nature of closed film canisters not apparent until officer opened canisters and discovered rocks of cocaine); *Graves*, 135 N.C. App. at 220, 519 S.E.2d at 773 (officer did not have probable cause to believe brown paper wads were evidence of crime when he did not know items were contraband until after he unfolded them); *State v. Carter*, 200 N.C. App. 47, 55, 682 S.E.2d 416, 422 (2009) (criminal nature of scraps of paper seized by officer not apparent until pieced back together and read).

In contrast to this case, in *Sapatch*, *Graves*, and *Carter*, the criminal nature of the item was not immediately apparent because the contraband was, literally, out of sight. All that could be seen at first were innocuous items -- a film canister, wads of brown paper, and a torn-up piece of paper. The plain

view doctrine did not apply because the contraband -- the cocaine inside the canister, the crack pipe inside the wads of brown paper, and the incriminating words on the torn up sheets of paper -- were, simply, not in plain view. Here, however, the items that Officer Roberts saw -- the coils -- constituted the contraband itself and was plainly and completely visible at first glance without any physical manipulation. Officer Roberts possessed sufficient information at the time she saw the coils in the trailer to have probable cause to believe that the coils were stolen. Mr. Ledford merely confirmed that the coils were, in fact, the stolen coils. Accordingly, we conclude that the trial court's findings of fact are sufficient to support the conclusion that the criminal nature of the coils was immediately apparent to Officer Roberts.

Turning to the final element -- whether Officer Roberts had a lawful right of access to the trailer in which the coils were found -- defendant argues that the trial court did not make the findings necessary to establish this element. We agree.

This Court has previously emphasized that a determination that contraband was in plain view is not sufficient to support a warrantless seizure of the contraband:

> What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. Thus, when officers are in a

public place or some other area, such as an open field, that is not protected by the Fourth Amendment, knowledge that they gain from their plain-view observations does not constitute a search under the Fourth Amendment. Whether such plain-view observations can justify a warrantless seizure, however, is a separate question. If the boundaries of the Fourth Amendment were defined exclusively by rights of privacy, "plain view" seizures would not implicate that constitutional provision at all. Yet, far from being automatically upheld, "plain view" seizures have been scrupulously subjected to Fourth Amendment inquiry. That is because, the absence of a privacy interest notwithstanding, [a] seizure . . . obviously invade[s] the owner's possessory interest.

*Nance*, 149 N.C. App. at 739, 562 S.E.2d at 561 (internal citations and quotation marks omitted).

It is well settled that officers have a lawful right of access to items located in a public place. *See Payton v. New York*, 445 U.S. 573, 587, 63 L. Ed. 2d 639, 651, 100 S. Ct. 1371, 1380 (1980) ("objects such as weapons or contraband found in a public place may be seized by the police without a warrant"). The first question to address in establishing whether an officer had a lawful right of access to an object, therefore, is whether the object was located in a public place or on private property. In *Nance*, this Court held that an open field leased by the defendant which was outside of the curtilage of his home was not a public place, noting that "[t]he fact that defendant's

property included open fields does not transform private property into public land." 149 N.C. App. at 742, 562 S.E.2d at 563.

If the seized item is not located in a public place, the officers may nevertheless have a lawful right of access to the item to justify its seizure if they entered the private property by consent, pursuant to a warrant, or under exigent circumstances. *Id.* at 741, 744, 562 S.E.2d at 562, 564 (concluding officers did not have a lawful right of access to seize malnourished horses on private property where the officers "had neither consent nor a warrant authorizing their entry onto defendant's property" and where "exigent circumstances did not exist").

*Nance* also rejected the argument that officers have lawful access to seize items on private property whenever they "are conducting [a] 'legitimate law enforcement function[].'" *Id.* at 742, 562 S.E.2d at 563. *Nance* acknowledged that it is not a trespass for an officer to enter private property "'for the purpose of a general inquiry or interview.'" *Id.* (quoting *Prevette*, 43 N.C. App. at 455, 259 S.E.2d at 599-600). However, *Nance* clarified that this rule does not "stand[] for the proposition that law enforcement officers may enter private

property without a warrant and *seize* evidence of a crime." *Id.*
(emphasis added). *Nance* explained:

> If the position advanced by the State were correct, law enforcement officers could enter onto private property and seize evidence of criminal activity without a warrant whenever they had probable cause to suspect that such activity was taking place. Such a position directly contradicts repeated admonitions by the United States Supreme Court that although
>
>> "[t]he seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity[,] [a] different situation is presented . . . when the property in open view is situated on private premises to which access is not otherwise available for the seizing officer."

*Id.* at 742-43, 562 S.E.2d at 563 (quoting *Texas*, 460 U.S. at 738, 75 L. Ed. 2d at 511, 103 S. Ct. at 1541). This Court, relying on *Nance*, has subsequently confirmed that, absent exigent circumstances, initiating a valid "knock and talk" does not give officers a lawful right of access to walk across the curtilage of a defendant's home to seize contraband in plain view. *State v. Grice*, ___ N.C. App. ___, ___, 735 S.E.2d 354, 358 (2012), *disc. review allowed*, ___ N.C. ___, 743 S.E.2d 179 (2013).

Here, the trial court failed to make any findings regarding whether the officers had legal right of access to the coils in the trailer. The trial court did not address whether the trailer was located on private property leased by defendant, private property owned by the mobile home park, or public property. It also did not make any findings regarding whether, assuming that the trailer was located on private property, the officers had legal right of access either by consent or due to exigent circumstances. We, therefore, remand for further findings of fact and conclusions of law regarding that issue. We leave it to the court's discretion whether to consider additional evidence.[3]

Reversed and remanded.

Chief Judge MARTIN and Judge STROUD concur.

---

[3]We find no merit to the State's argument that the seizure of the coils could alternatively be justified pursuant to a search incident to lawful arrest. Under the search incident to arrest warrant requirement exception, "'if the search is incident to a lawful arrest, an officer may conduct a warrantless search of the arrestee's person and the area within the arrestee's immediate control.'" *Carter*, 200 N.C. App. at 51, 682 S.E.2d at 419 (quoting *State v. Logner*, 148 N.C. App. 135, 139, 557 S.E.2d 191, 194 (2001)). The trial court made no findings of fact that would support the State's contention, and the record contains no evidence that would support the necessary findings.