ELMORE, Judge.
*139 Three police officers entered defendant's apartment to execute arrest warrants issued for misdemeanor offenses. While two officers made the in-home arrest, the other officer conducted a protective sweep of defendant's apartment, leading to the discovery and seizure of a stolen shotgun. Defendant moved to suppress the shotgun as evidence obtained through an unlawful search and seizure, arguing that the officer lacked authority to conduct the protective sweep, and the seizure could not be justified under the "plain view" doctrine. The trial court denied defendant's motion to suppress. After the ruling, defendant pleaded guilty to possession of a firearm *237 by a felon and, pursuant to defendant's plea arrangement, the court dismissed the charge of possession of a stolen firearm.
We allowed defendant's petition for writ of certiorari to review the trial court's order denying his motion to suppress. Upon review, we hold that (1) the officer was authorized to conduct the protective sweep, without reasonable suspicion, because the rooms in the apartment-including the bedroom where the shotgun was found-were areas "immediately adjoining the place of arrest from which an attack could be immediately launched," Maryland v. Buie , 494 U.S. 325, 334, 110 S.Ct. 1093, 1098, 108 L.Ed.2d 276, 286 (1990) ; and (2) because the officer lacked probable cause to believe that the shotgun was contraband "without conducting some further search of the object," " 'its incriminating nature [was not] immediately apparent' " and "the plain-view doctrine cannot justify its seizure," Minnesota v. Dickerson , 508 U.S. 366, 375, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334, 345 (1993) (quoting Horton v. California , 496 U.S. 128, 136, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112, 123 (1990) ) (citing Arizona v. Hicks , 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987) ). Reversed.
*140 I. Background
In January 2015, Officer Paier assumed a caseload of low-risk supervisees including defendant, who was on probation for impaired driving. During a routine absconder check, Officer Paier discovered outstanding arrest warrants against defendant for absconding probation and failing to appear at a scheduled court date. He verified defendant's current address and relayed the information to dispatch. Officer Joyce of the Kernersville Police Department assembled a squad, consisting of Officers Stokes, Ziglar, and Castle, to execute the arrest warrants.
On 1 April 2015, at approximately 11:00 p.m., the officers arrived at defendant's apartment complex. Officer Stokes staged with a K-9 in a back hallway of the multi-unit building, while the other officers approached the front door of defendant's unit. When Officer Joyce knocked, defendant opened the door cautiously, in his underwear, and confirmed his identity. Officers Ziglar and Castle entered the apartment and immediately placed defendant in custody as Officer Joyce, wearing a mounted body camera, conducted a protective sweep of the other rooms.
The front door of the apartment leads directly into the living room. The living room opens up on the back right corner, opposite the doorway, leading directly into the kitchen. A short hallway, spanning only a few feet, runs perpendicular in between the living room and the kitchen. The hallway is visible from the front door and more closely resembles the center of a four-way intersection, connecting every room inside the apartment: The living room and kitchen to the south, a bathroom to the east, an empty bedroom to the north, and defendant's bedroom to the west.
Officer Joyce stated that he conducted the sweep for the officers' safety, only searching areas where individuals might be hiding. During the sweep, he saw a shotgun leaned up against a wall in the entryway of defendant's bedroom. The bedroom door was open and the shotgun was visible, in plain view, from the hallway. Officer Joyce walked past the shotgun to check defendant's bedroom, confirming there were no other occupants in the apartment. The entire sweep took less than two minutes.
After completing the sweep, Officer Joyce secured the shotgun "to have it in our control and also check to see if it was stolen." Once he confirmed the shotgun was unloaded, he carried it into the living room, where defendant stood near the front door, his hands cuffed behind his back, surrounded by Officers Ziglar and Castle. Officer Joyce placed the shotgun on a couch, used his flashlight to examine the receiver, and then turned over the shotgun to expose its serial number, which *141 he immediately called into Communications. When Communications reported the shotgun stolen, the officers seized the weapon.
II. Discussion
Defendant argues that the trial court erred in denying his motion to suppress. Our review of a trial court's denial of a suppression motion is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, *238 in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." State v. Cooke , 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). "The trial court's conclusions of law ... are fully reviewable on appeal." State v. Hughes , 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).
A. The Protective Sweep
Defendant first challenges the protective sweep of his apartment. "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." Maryland v. Buie , 494 U.S. 325, 327, 110 S.Ct. 1093, 1094, 108 L.Ed.2d 276, 281 (1990), cited in State v. Bullin , 150 N.C.App. 631, 640, 564 S.E.2d 576, 583 (2002). To be lawful, the sweep must be "narrowly confined to a cursory visual inspection of those places in which a person might be hiding." Buie , 494 U.S. at 327, 110 S.Ct. at 1094, 108 L.Ed.2d at 281. In Buie , the U.S. Supreme Court articulated two scenarios in which police officers may conduct a protective sweep. First, incident to an arrest, officers may, "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." Id. at 334, 110 S.Ct. at 1098, 108 L.Ed.2d at 286. Second, when an officer has "articulable facts which, taken together with rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger." Id.
The trial court concluded that the protective sweep of the apartment was valid under the first prong of Buie . Defendant argues, however, that Officer Joyce was not authorized to conduct a protective sweep of the bedroom, where the shotgun was found, because the bedroom was not "immediately adjoining the place of arrest from which an attack could be immediately launched."
Our appellate courts have not specifically addressed which areas might qualify as "immediately adjoining the place of arrest," but decisions *142 from the federal courts are instructive. In United States v. Lauter , 57 F.3d 212 (2d Cir. 1995), the police executed an arrest warrant against the defendant in his small, basement apartment. Id. at 213. The apartment consisted of two small, adjacent rooms. Id. After arresting the defendant in the front room, the officers conducted a protective sweep of the back room, where they discovered a shotgun protruding from underneath a bed. Id. at 213-14. The defendant moved to suppress the shotgun, arguing that the protective sweep was impermissibly broad. Id. at 214, 216. Upholding the sweep under the first prong of Buie , the court reasoned that "the back room was 'immediately adjoining' the area in which [the defendant] was arrested," and the police action "was well within the scope of a permissible protective sweep, particularly in light of the small size of the apartment." Id. at 216-17 (citing United States v. Robinson , 775 F.Supp. 231, 235 (N.D. Ill. 1991) ).
Likewise, in United States v. Thomas , 429 F.3d 282 (D.C. Cir. 2005), the defendant challenged the scope of a protective sweep inside his one-bedroom apartment. Id. at 286. The front door of the apartment opened immediately into a hallway, where the defendant was arrested. Id. at 284, 287. To the left was a living room, and to the right were "doorways off the hallway leading to the kitchen, bathroom, and bedroom." Id. at 284. The court concluded that the bedroom, fifteen feet from the apartment's entrance, was "immediately adjoining the place of arrest" because "every room swept 'could be immediately accessed from the hallway' " and "the entrance to the bedroom was a straight shot down the hallway from the spot where [the defendant] was arrested." Id. at 284-85, 287. Although the defendant maintained that the living room and front hallway were the only "immediately adjoining spaces," the court declined to define the concept so narrowly:
The safety of the officers, not the percentage of the home searched, is the relevant criterion.... If an apartment is small enough that all of it "immediately adjoin[s] the place of arrest" and all of it constitutes a space or spaces "from which an attack could be immediately launched," ... then the entire apartment is subject to a limited *239 sweep of spaces where a person may be found.
Id. at 287-88 (alteration in original) (citations omitted) (quoting Buie , 494 U.S. at 327, 334, 110 S.Ct. at 1094, 1098, 108 L.Ed.2d at 281, 286 ).
Guided by the foregoing decisions, we agree with the trial court's conclusion that Officer Joyce had authority to conduct a protective sweep of the rooms in the apartment. As the courts findings indicate, and as the video footage shows, defendant was in the living room when *143 Officers Ziglar and Castle entered and placed him in handcuffs. Officer Joyce proceeded, "without any significant delay or hesitation," to conduct a sweep of the remaining rooms "for the sole purpose of determining whether there were any other occupants in the apartment that could launch an attack on the officers." Every room in the apartment was connected by the short hallway, and the apartment was "small enough that a person hiding in any area outside of the living room could have rushed into the living room without any warning." Based on the size and layout of the apartment, the trial court properly concluded that "[a]ll of the rooms"-including defendant's bedroom where the shotgun was found-"were part of the space immediately adjoining the place of arrest and from which an attack could have been immediately launched."
B. Seizure of the Shotgun
Next, defendant challenges the seizure of the shotgun. The trial court denied defendant's motion to suppress because Officer Joyce was permitted to conduct "a quick protective sweep of the apartment and the shotgun was in plain view." Defendant argues that the seizure cannot be justified under the plain view doctrine because the incriminating nature of the shotgun was not immediately apparent. Relying on the U.S. Supreme Court's decision in Arizona v. Hicks , 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), defendant also contends that Officer Joyce conducted an unlawful search, without probable cause, by manipulating the shotgun to reveal its serial number.
Although warrantless searches are presumptively unreasonable, there are circumstances in which " 'police may seize evidence in plain view without a warrant.' " Horton v. California , 496 U.S. 128, 134, 110 S.Ct. 2301, 2306, 110 L.Ed.2d 112, 121 (1990) (quoting Coolidge v. New Hampshire , 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564, 582 (1971) ). The plain view doctrine allows an officer to seize evidence without a warrant if:
(1) the officer views the evidence from a place where he has [a] legal right to be, (2) it is immediately apparent that the items observed constitute evidence of a crime, are contraband, or are subject to seizure based upon probable cause, and (3) the officer has a lawful right of access to the evidence itself.
State v. Alexander , 233 N.C.App. 50, 55, 755 S.E.2d 82, 87 (2014) (citing State v. Nance , 149 N.C.App. 734, 740, 562 S.E.2d 557, 561-62 (2002) ); see also Horton , 496 U.S. at 136-37, 110 S.Ct. at 2308, 110 L.Ed.2d at 123 ; State v. Mickey , 347 N.C. 508, 516, 495 S.E.2d 669, 674, cert. denied , *144 525 U.S. 853, 119 S.Ct. 131, 142 L.Ed.2d 106 (1998). The burden rests with "the State to establish all three prongs of the plain view doctrine." State v. Graves , 135 N.C.App. 216, 219, 519 S.E.2d 770, 772 (1999).
The "immediately apparent" requirement is " 'satisfied if the police have probable cause to believe that what they have come upon is evidence of criminal conduct.' " State v. Wilson , 112 N.C.App. 777, 782, 437 S.E.2d 387, 389-90 (1993) (quoting State v. White , 322 N.C. 770, 777, 370 S.E.2d 390, 395, cert. denied , 488 U.S. 958, 109 S.Ct. 399, 102 L.Ed.2d 387 (1988) ); see also State v. Carter , 200 N.C.App. 47, 54, 682 S.E.2d 416, 421 (2009). "Probable cause exists where the facts and circumstances within [the officer's] knowledge and of which [he] had reasonable trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." Brinegar v. United States , 338 U.S. 160, 175-76, 69 S.Ct. 1302, 1310-11, 93 L.Ed. 1879, 1890 (1949) (citation omitted) (internal quotation marks omitted), quoted in *240 State v. Zuniga , 312 N.C. 251, 261, 322 S.E.2d 140, 146 (1984). A seizure is valid only "when the objective facts known to the officer meet the standard required." State v. Peck , 305 N.C. 734, 741, 291 S.E.2d 637, 641-42 (1982) (citations omitted); see also Devenpeck v. Alford , 543 U.S. 146, 152, 125 S.Ct. 588, 593, 160 L.Ed.2d 537, 544 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the [ ] officer at the time...." (citation omitted)). "If ... the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object," then "its incriminating nature [is not] immediately apparent" and "the plain-view doctrine cannot justify its seizure." Minnesota v. Dickerson , 508 U.S. 366, 375, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334, 345 (1993) (alteration in original) (citations omitted) (internal quotation marks omitted).
Observing the shotgun in plain view did not provide Officer Joyce with authority to seize the weapon permanently. The State's evidence at the suppression hearing failed to establish that, based on the objective facts known to him at the time, Officer Joyce had probable cause to believe the weapon was contraband or evidence of a crime. The officers were executing arrest warrants issued for misdemeanor offenses and were not aware that defendant was a convicted felon. Before the seizure, Officer Joyce asked the other officers in the apartment if defendant was a convicted felon, which they could not confirm. Officer Joyce testified that it was Officer Stokes who informed him of defendant's status, but Officer Stokes never entered the apartment, and Officer Joyce could not recall when he learned defendant was a convicted felon:
*145 [PROSECUTOR:] So at what point during this encounter-you know he's on probation. You've got him in custody. You see a shotgun in there which you're going to seize for protection reasons. But at what point did you also become suspicious that the defendant might be a convicted felon and not be allowed to possess that weapon because of his status as a felon or a probation-being on probation?
[OFFICER JOYCE:] I believe Officer Stokes had that information stating that he was a felon. And at that-Officer Stokes, I believe, was the one that made me aware of that.
[PROSECUTOR:] Okay. So at some point you made the determination that he was a convicted felon?
[OFFICER JOYCE:] Correct.
[PROSECUTOR:] All right. Do you know at what point that occurred in this, you know, scheme? You've got a lot going on. But at what point that occurred for you.
[OFFICER JOYCE:] For me, I really-I really don't know. It may be before or it may be after. The only thing I remember was the gun was stolen.
[PROSECUTOR:] How did you determine it was stolen?
[OFFICER JOYCE:] I read the serial number to Communications, and they advised it was stolen out of Guilford County.
Defense counsel elicited the same testimony from Officer Joyce on cross-examination:
[DEFENSE COUNSEL:] And I believe it was your testimony that you said Officer Stokes had the information about Mr. Smith having a felony conviction. Is that correct?
[OFFICER JOYCE:] I believe-I believe it was Officer Stokes.
....
[DEFENSE COUNSEL:] And would it surprise you that [Officer Stokes] said, during further investigation of Mr. Smith, it was then determined he was a previously convicted felon?
[OFFICER JOYCE:] I knew at some point we found out he was a felon.
*146 [DEFENSE COUNSEL:] But it was your testimony you couldn't remember if it was before or after you seized the gun?
[OFFICER JOYCE:] Correct. I just know the gun was stolen.
The dissent argues that, even if the officers did not know defendant had been convicted of a felony, they did know defendant was on probation for committing some offense. Thus, the dissent reasons, it was "immediately apparent that the shotgun was *241 contraband" because a ban on possessing firearms is a "regular condition" of probation. But the law does not require a sentencing judge to impose the regular conditions of probation on every probationer. See N.C. Gen. Stat. § 15A-1343(b) (2015). And there is no evidence to suggest the officers knew the specific terms of defendant's probation, including whether the terms of defendant's probation prohibited him from possessing firearms, at any time during the warrant service.[1] The incriminating character of the shotgun became apparent only upon some further action by the officers.
When "unrelated to the objectives of the authorized intrusion," even the slight movement of an object, "which expose[s] to view [its] concealed portions," is impermissible. Arizona v. Hicks , 480 U.S. 321, 325, 107 S.Ct. 1149, 1152, 94 L.Ed.2d 347, 354 (1987). In Hicks , while searching for weapons in the defendant's apartment, one of the officers noticed two sets of expensive stereo equipment that "seemed out of place." Id. at 323, 107 S.Ct. at 1152, 94 L.Ed.2d at 353. Suspecting that the equipment was stolen, the officer maneuvered some of the stereo components to reveal their serial numbers, which he then read, recorded, and reported by phone to police headquarters. Id. When headquarters confirmed that the equipment was stolen, the officer seized it immediately. Id. The U.S. Supreme Court concluded that moving the equipment "constitute[d] a 'search' separate and apart from the search ... that was the lawful objective of [the officer's] entry into the apartment." Id. at 324-25, 107 S.Ct. at 1152, 94 L.Ed.2d at 353-54. By taking action "unrelated to the objectives of the authorized intrusion," the officer "produce[d] a new invasion of [the defendant's] privacy unjustified by the exigent circumstances that validated the entry." Id. at 325, 107 S.Ct. at 1152, 94 L.Ed.2d at 354. As to the reasonableness of the search, the Court held that it could not be justified under the plain view doctrine because the officer lacked probable cause: "A dwelling-place search, no less than a dwelling-place seizure, requires probable cause, and there is no reason in theory or practicality *147 why application of the 'plain view' doctrine would supplant that requirement." Id. at 328, 107 S.Ct. at 1154, 94 L.Ed.2d at 356.
As in Hicks , where the officer manipulated the stereo equipment to expose its serial number, here Officer Joyce took similar steps to uncover the serial number on the shotgun. After moving the weapon into the living room, he placed it on the couch, shined his flashlight on the receiver momentarily, and then turned the shotgun over to expose the serial number, which he immediately called into Communications. As Hicks instructs, such action constitutes a search, separate and apart from the lawful objective of the entry, even though it "uncovered nothing of any great personal value to [defendant]-serial numbers rather than ... letters or photographs." Hicks , 480 U.S. at 325, 107 S.Ct. at 1152-53, 94 L.Ed.2d at 354.
The search cannot be justified under the plain view doctrine because the shotgun's incriminating nature was not immediately apparent. There is no evidence in the record to indicate that Officer Joyce had probable cause-or even reasonable suspicion-to believe the shotgun was stolen. It was only after the unlawful search that he had reason to believe the shotgun was evidence of a crime. See Graves , 135 N.C. App. at 220, 519 S.E.2d at 773 (concluding that the State failed to present any evidence that the officer "recognized or even suspected that the brown paper wads contained contraband before he picked them up and before he unraveled them"); cf. State v. Price , 233 N.C.App. 386, 402, 757 S.E.2d 309, 319 (2014) (concluding that the "immediately apparent" requirement was met where the "defendant, while holding his rifle, admitted that he was a convicted felon"); United States v. Malachesen , 597 F.2d 1232, 1234-35 (8th Cir. 1979) (concluding that a pistol, seized temporarily for the officers' safety, became contraband subject to seizure when an officer learned from two other detectives searching the premises that the defendant had a prior felony conviction).
III. Conclusion
Although Officer Joyce had authority to conduct a protective sweep of the apartment, *242 the seizure of the shotgun cannot be justified under the plain view doctrine. Based on the evidence presented at the suppression hearing, the State failed to show that the incriminating nature of the shotgun was immediately apparent. Because the shotgun is evidence obtained through an unlawful search and seizure, the trial court erred in denying defendant's motion to suppress.
REVERSED.
Judge DIETZ concurs.
Judge ARROWOOD dissents by separate opinion.

Defendant's probation officer was not present during the warrant service.